JERRY R. HALL, Doing Business as LAKEWOOD SUPPLY Co., Respondent, *v.* CARL G. EK & SON CONSTRUCTION Co., INC., et al., Appellants, et al., Defendant.

Fourth Department, January 17, 1963.

*Vedder & Crowley* (*James F. Crowley* of counsel), for appellants.

*Gerace & Lodestro* (*Frances V. Dow* of counsel), for respondent.

WILLIAMS, P. J. The question presented is whether an assignee of the claim of a person who has furnished labor and materials in the construction of a public improvement has the right to file a notice of lien under section 5 of the Lien Law. For purposes of clarity, we note at this point that the assignment was of a *claim* for labor and materials furnished, as distinguished from an assignment of a *lien* already perfected by the filing of notice thereof.

The assignment of the claim was made to the plaintiff-respondent after all of the work had been performed and the materials furnished to the project by the assignor. The defendant-appellant Ek & Son Construction Co., Inc. was the general contractor and the defendant-appellant Travelers Indemnity Company was the surety on a bond given to discharge the so-called lien filed by plaintiff. The present action was brought to foreclose the so-called lien. Answers were served, after which the plaintiff moved for summary judgment. The defendants resisted the motion and took the position that the plaintiff was not entitled to file a lien under said section 5 of the Lien Law. The Justice at Special Term construed section 5 as authorizing the filing of a lien by the plaintiff.

Since 1871, when *Rollin* v. *Cross* (45 N. Y. 766) was decided, it has been the law of this State that the assignee of a claim

may not file a lien. That case has never been overruled. We call attention to the fact that the *Rollin* case dealt with a lien against a private, as distinguished from a public, improvement. Chapter 478 of the Laws of 1862, which controlled the *Rollin* decision, was similar in substance and effect to the present section 3, which relates to liens against private improvements.

The *Rollin* case was followed in *Tisdale Lbr. Co.* v. *Read Realty Co.* (154 App. Div. 270), also an action to foreclose a mechanic's lien on a private improvement. The plaintiff was the assignee of one Tisdale, who had furnished materials in the construction of the improvement. The court stated (p. 271): "It seems to be true * * * that a valid mechanic's lien cannot be created by filing the statutory notice by the assignee of a claim. The right to file a mechanic's lien is a personal right limited to the person performing the labor or furnishing the material, and is not assignable. The transfer of the claim in suit, therefore, did not carry with it the assignor's right to acquire a valid lien. This has been the construction given to similar statutes for many years."

The court then reasoned that the definition of a lienor in section 2 of the Lien Law, "any person having a lien upon property * * * and includes his successor in interest", did not include an assignee of a claim. "A ' successor in interest' within the meaning of this term as used in the statute, is one who succeeds to a lienor's rights under a valid notice of lien already filed, by assignment or otherwise. In other words, the assignor must have an existing lien before he can have a ' successor in interest'." The court went on (pp. 271–272) to reject the contention by the plaintiff that he was the "successor in interest" under an "inchoate lien". "There is no such thing as an ' inchoate' mechanic's lien. The sole right given by the statute is to create a lien which has no existence, inchoate or otherwise, until the notice is filed, and until this is done no priority among the claims of creditors is recognized. The lien and a consequent priority originates with the notice when duly filed. (*Mack* v. *Colleran,* 136 N. Y. 617, 620.) "

Unless an assignee of a claim arising out of a public improvement has rights under the language of section 5, not available to an assignee under section 3, the plaintiff's contentions must fail. We now turn to specific language of section 5, which is the section under which the present case must be decided: "A person performing labor for or furnishing materials to a contractor, *his* subcontractor or legal representative, for the construction * * * of a public improvement * * *

shall have a lien * * * upon the moneys of the state or of such corporation * * * upon filing a notice of lien as prescribed in this article ''. (Italics added.) Special Term found that the words '' or legal representative '' referred to the person performing or furnishing and included an assignee of such person. It is obvious, however, that the words '' or legal representative '' do not refer back to the person performing labor or furnishing materials but relate to the contractor or subcontractor to whom such labor or materials were furnished. Any other construction is contrary to the clear language of the section. (Cf. *Dorn* v. *Johnson Corp.*, 16 A D 2d 1009, 1010; *Wynkoop* v. *People,* 1 A D 2d 620, 622.) The fact that the words '' or legal representative '' do not appear in section 3 does not affect in any way the construction of section 5 because neither section indicates that a person who performs labor or furnishes materials, *or his assignee,* may file a claim. Nor is such a construction warranted. Liens on private improvements and on public improvements are in the same category so far as the right of an assignee of a claim is concerned (Blanc, Mechanics' Liens, pars. 9g, 71c, pp. 17, 435 [1949]).

The case of *Ogden* v. *Alexander* (140 N. Y. 356), at first glance, seems to be contrary to the holding in *Rollin* v. *Cross*; but the court very carefully pointed out the distinction between that case and the *Rollin* case where it is said (p. 361) : '' We may grant that Oliver [a former partner] lost all ownership of the claim and retained no equity against or interest in, the partnership assets, at least, after all its debts had been paid, but that fact does not make Ogden *a mere assignee,* or put him outside of the intended purpose and scope of the statute.'' (Italics added.)

There is no question that, after a lien has been created by filing of a notice thereof, it may be assigned (*Tisdale Lbr. Co.* v. *Read Realty Co.,* 154 App. Div. 270, *supra*; Lien Law, § 14). In fact, a reading of section 14 clearly sets forth the distinction that we make. The section commences: '' A lien, filed as prescribed in this article, may be assigned by a written instrument ''. If an assignee of a claim had had the right to file a lien, there would have been no need for the enactment of section 14 which was added by chapter 418 of the Laws of 1897. It must also be remembered that section 16, which pertains to the assignment of funds, has no bearing whatsoever upon the problem here involved.

It follows that, inasmuch as the plaintiff has no lien, the foreclosure features of the action must fall; and it, in turn, follows

that the complaint must be dismissed as to Travelers Indemnity Company. The alleged lien was discharged and the bond took the place of the fund in accordance with subdivision 5 of section 21 of the Lien Law. The right of recovery on that bond is not personal but could be had only after a judgment of foreclosure had been procured. (*Berger Mfg. Co.* v. *City of New York*, 206 N. Y. 24; *Security Trust Co. of Rochester* v. *Seaboard Sur. Co.*, 15 A D 2d 993; *Johnson* v. *Breen Co.*, 143 Misc. 908, affd. 235 App. Div. 651; *Simonelli* v. *Guidone & Son*, 201 App. Div. 44. See, also, Jensen, Mechanics' Liens [3d ed.], p. 408, § 353.)

The Special Term Justice directed that the matter be referred to a Referee for a determination only of the amount due as to Ek & Son and Travelers. The portion of the order that directs the assessment of the amount due from Ek & Son to the plaintiff should be affirmed. We see no reason to compel the plaintiff to commence a simple action for money damages merely because a judgment in foreclosure may not be granted. But inasmuch as Ek & Son has asked for a jury trial of the issues relating to amount, and inasmuch as that defendant has not waived the right to a jury trial, the determination of the amount due should be had before the court and a jury. Subdivision 3 of rule 113 of the Rules of Civil Practice states that if there is only a triable issue of fact as to damages " the court shall order an immediate hearing before a referee, before the court, or before the court and a jury, whichever may be proper, to assess * * * ''. In this case a court and jury is the proper forum.

HALPERN, J. (dissenting). I do not believe that the case of *Rollin* v. *Cross* (45 N. Y. 766) decided in 1871, relied upon by the majority, would be followed today, even with respect to a mechanic's lien upon private property. That case was decided upon the theory that the right to file a mechanic's lien under the local lien law (L. 1862, ch. 478) applicable to Kings and Queens Counties, was a personal right of the person furnishing the labor or material and that the right could not be assigned.

There was nothing in the statute before the court in the *Rollin* case, declaring that the right was a personal one or forbidding an assignment of it. But, purely as a matter of judge-made law, the court held that the right was not assignable.

The argument was made that the Legislature was concerned only with the payment of the laborer or materialman and that presumably, if he sold his claim, he had been paid for it and the Legislature was not concerned with protecting the interests of the purchaser of the claim. This argument overlooked the fact that the ability of the laborer or materialman to sell his

claim at its face amount might well depend upon the security afforded by the right to file a lien and, if a purchaser of the claim would not have that right, the laborer or materialman might be unable to sell his claim at its full value. In order fully to protect the interests of the laborer or materialman, his right to file a lien must be held to be an assignable right.*

The *Rollin* decision represented a carry-over of the ancient view that all rights, contractual or statutory, were personal and nonassignable, unless it was otherwise provided in the contract or statute. This view has long since been rejected. '' The general rule now prevailing (as the successor of the archaic view that a contract created strictly personal obligations between the parties and non-assignability was a logical attribute) that any property right, not necessarily personal, is assignable, is overcome only by agreement of the contracting parties or a principle of law or public policy.'' (*Rosenthal Paper Co.* v. *National Folding Box & Paper Co.*, 226 N. Y. 313, 325; see, also, Restatement, Contracts, § 151; 2 Williston, Contracts [Rev. ed.], §§ 405–412.)

The concept of the personal nature of the right to file a lien is out of harmony with the modern law, under which choses in action based on contract are freely assignable. It is no longer necessary for the assignee of a chose in action to sue in the name of the assignor. Since 1880, it has been expressly provided that the assignee has the right to sue in his own name (Code Civ. Pro., § 1909, as adopted by L. 1880, ch. 178, now Personal Property Law, § 41, subd. 3).

There have been many other statutory and judicial developments since the *Rollin* case which have undermined the authority of that case. In 1871, at the time of the decision of the *Rollin* case, there was no general lien statute; there were only local lien statutes applicable to particular cities and counties. The first general Lien Law was adopted in 1885 (L. 1885, ch. 342). This was superseded by the revised Lien Law adopted in 1897 (L. 1897, ch. 418), from which the present Lien Law was derived, without substantial change so far as here relevant.

---

* This was well explained in a recent Texas case: " [I]t is of material advantage to the laborer or materialman that he be allowed to collect his claim as quickly as possible and that he receive full value therefor. If he be denied the privilege of assigning his equitable right to fix the lien along with his debt, it will often result that he must either suffer the delay and expense incident to fixing the lien or else assign his claim at a discount and suffer the loss. He should be permitted to avail himself of the security which the statute gives him in the way most beneficial to himself, and, if he can better himself, without injury to the debtor, by giving his assignee the right to perfect the lien, he should be permitted to do so" (*Southern Sur. Co. of N. Y.* v. *First State Bank of Marquez*, 54 S. W. 2d 888, 890; see, also, the cases cited therein).

It should be noted that in the statute under which the *Rollin* case was decided (L. 1862, ch. 478), there was no provision for the assigning of a mechanic's lien, even after it had been perfected by the filing of a notice of lien.

In the Lien Law of 1897 specific provision was made, for the first time, for the procedure to be followed with respect to the filing of an assignment of a notice of lien (§ 14). So far as liens upon private property were concerned, there was still nothing expressly said in the statute, one way or the other, about the assignability of the equitable right to file a lien. (So far as public improvements were concerned, the assignability of this right was recognized in the Public Improvement Lien Law of 1878 [L. 1878, ch. 315, discussed *infra*], which was incorporated into the 1897 Lien Law.) The annotator of the 1897 statute raised the question of whether the provision for the assignment of perfected liens did not, of itself, override the *Rollin* case and recognize the assignability of the right to file a lien upon a private improvement (3 Silvernail, Annotations to the General Laws and Constitution of New York, p. 2680 [1901]). Certainly, the right to a mechanic's lien which is freely assignable after the filing of notice cannot logically be regarded as a purely personal right before filing.

Under the 1897 statute, it was early held that the laborer or materialman had an interest in the premises toward the improvement of which he had contributed his labor or material, from the time of the performance of the work, or the supplying of the materials, even before a notice of lien was filed. This right was in the nature of an inchoate mechanic's lien which became perfected upon the filing of the notice (*Kane Co.* v. *Kinney*, 174 N. Y. 69 [1903]). As the Court of Appeals explained: " The object and purpose of the Mechanics' Lien Law was to protect a person who, with the consent of the owner of real property, enhanced its value by furnishing materials or performing labor in its improvement by giving him an interest therein to the extent of the value of such material or labor. The filing of the notice of lien is the statutory method prescribed by which the party entitled thereto perfects his inchoate right to that interest. That is the manner and mode of procedure in which the right is asserted. A certain time is allowed in which the lien may be asserted or lost. During that time there is a preferential statutory right in the nature of an unperfected equitable lien in favor of the laborer, mechanic, materialman or sub-contractor. And when a notice of lien is filed that right is perfected " (p. 73). The *Kane* case was apparently overlooked by the court in *Tisdale Lbr. Co.* v. *Read Realty Co.* (154 App. Div. 270) in

making the statement which is quoted in the majority opinion.* (See, also, following the *Kane* case, *Crane Co.* v. *Pneumatic Signal Co.,* 94 App. Div. 53, affd. *sub nom. Cranc Co.* v. *Smythe,* 182 N. Y. 545.)

An inchoate right to an interest in real property or an unperfected equitable lien, as the court called it, is a property right and is therefore assignable. It is generally held, in jurisdictions in which an inchoate mechanic's lien is recognized, that the inchoate lien is assignable and that the assignee may file a notice of lien perfecting the lien and making it choate or absolute (*West Jersey Homeopathic Hosp.* v. *Gibbs,* 103 N. J. Eq. 262; *Brown* v. *Home Development Co.,* 129 N. J. Eq. 172, 183; *Peatman* v. *Centerville Light, Heat & Power Co.,* 105 Iowa 1; see, also, 36 Am. Jur., Mechanics' Liens, § 195; 57 C. J. S., Mechanics' Liens, § 216 and cases there cited).

Furthermore, as is implied in the portion of the *Tisdale* opinion quoted in the majority opinion, if an inchoate mechanic's lien is recognized, it follows that an assignee thereof is a " successor in interest " of the person supplying the labor or materials within the meaning of section 2 of the Lien Law and the assignee is therefore authorized by the statute to file a notice of lien to perfect the inchoate lien. There was no counterpart of section 2 in the statute before the court in the *Rollin* case and the concept of an inchoate mechanic's lien had not yet been developed in 1871 when the *Rollin* case was decided.

The development of the trust concept, beginning in 1929, making the funds received by owners or contractors, for the purpose of paying for improvements upon real property, trust funds for the benefit of the persons furnishing labor and materials, is incompatible with the notion of a purely personal right. The rights of the beneficiaries of the trust are freely assignable

---

* The statement quoted from the *Tisdale* case in the majority opinion to the effect that " There is no such thing as an 'inchoate' mechanic's lien " was repudiated by the court which made it (the Appellate Division of the Second Department) in *Aquilino* v. *United States* (2 A D 2d 747, 748 [1956]). The court there said: " When respondents furnished labor and material for the improvement of Bottone's property with her consent, and thus enhanced its value, they acquired an interest therein to the extent of the value of the labor and materials furnished * * * and, by filing their notices of lien, *perfected their inchoate rights to such interest.* (See *Kane Co.* v. *Kinney,* 174 N. Y. 69, 73; *Schaghticoke Powder Co.* v. *Greenwich & Johnsonville Ry. Co.,* 183 N. Y. 306, 310 * * *.) " (Italics added.)

This decision was subsequently reversed by the Court of Appeals (3 N Y 2d 511) but that decision was in turn set aside upon reargument after the United States Supreme Court had vacated the judgment of the Court of Appeals, and the decision of the Appellate Division was then unanimously affirmed (10 N Y 2d 271).

(see Lien Law, § 36, added by L. 1929, ch. 515, amd. by L. 1932, ch. 627; Lien Law, §§ 36-a, 36-b, added by L. 1930, ch. 859, amd. by L. 1932, ch. 627; all repealed by L. 1959, ch. 696 and replaced by Lien Law, §§ 70, 71). These trust provisions reinforce the holding of the *Kane* case, *supra,* that persons furnishing labor or materials have an interest in the premises improved, in the nature of an inchoate mechanic's lien, even before the filing of a notice of lien. The rights of such persons have been held to be superior to the right of the United States under a Federal tax lien, even though the notice of the Federal lien was filed before the notices of the mechanic's liens (*Aquilino* v. *United States,* 2 A D 2d 747, affd. 10 N Y 2d 271, *supra*). (See, also, *Cranford Co.* v. *Leopold & Co.,* 189 Misc. 388, 391–392, affd. 273 App. Div. 754, affd. 298 N. Y. 676; and, see, the authorities cited *supra* for the proposition that where a right to an inchoate mechanic's lien is recognized, that right is assignable.)

The courts of this State have deviated from the personal right theory of the *Rollin* case in many cases. In *Ogden* v. *Alexander* (140 N. Y. 356, 360 [1893]), it was held that when a partnership business was sold to one of the partners, he had the right to file a lien for work done by the partnership. The court noted that a free-lance purchaser of the claims of a laborer or material-man "might be a mere speculator for whose safety the statute has no concern" (p. 360) but held that a partner purchasing the entire business and incidentally acquiring the right to file a lien did not come in that category. The court also noted that in the Lien Law of 1885 (L. 1885, ch. 342) which superseded the local act which was before the court in the *Rollin* case, it was provided that the statute should be "construed liberally to secure the beneficial interests and purposes thereof" (§ 25; now Lien Law, § 23).

In the present case, the plaintiff purchased the business of the Lakewood Supply Company (a business carried on by one W. Ernest Tiffany) which had supplied the labor and materials to the defendant Ek & Son Construction Co., and the plaintiff continued the business under the same trade name. This is not a case of a speculator buying up claims of laborers or materialmen to whom the court in the *Ogden* case indicated it would be reluctant to extend protection.

The *Rollin* doctrine has also been held to be inapplicable to a trustee in bankruptcy of the person who had furnished labor or materials (*Davis* v. *City of New York,* 75 App. Div. 518; *Held* v. *City of New York,* 83 App. Div. 509). The right to file a notice of lien was held not to be personal to the bankrupt; the trustee in bankruptcy was allowed to file the notice. The *Rollin*

doctrine has also been held to be inapplicable in the case of the consolidation of two or more corporations and the consolidated corporation has been held to be entitled to file a lien for work performed by one of the constituent corporations (*Chambers* v. *Vassar's Sons & Co.*, 81 Misc. 562). As Austin B. Griffin stated in his authoritative work on Mechanics' Liens (p. 8): "the term 'successor in interest' as used in the statute may include such trustee, or consolidated corporation, and by the same reasoning should include an executor or administrator of one entitled to file a notice of lien". As Mr. Griffin indicates in his text, the court in *Tisdale Lbr. Co.* v. *Read Realty Co.* (154 App. Div. 270) cited in the majority opinion, gave too narrow a construction to the words "successor in interest" as they appeared for the first time in the definition of the term "lienor" in section 2 of the Lien Law of 1897 (now section 2 of the present Lien Law).

In view of the statutory and judicial developments outlined above, I do not believe that the *Rollin* case is any longer the law, even with respect to a private improvement lien. But I need not rest my dissent upon that conclusion. We are here concerned, not with a private improvement lien, but with a public improvement lien, and no case has ever applied the *Rollin* doctrine to a public improvement lien.

Even if we assume that some part of the *Rollin* doctrine still survives with regard to liens on private property, it must be recognized that it is an anachronistic doctrine and we ought not to extend it to a public improvement lien unless we are required to do so by the clear language of the statute governing public improvement liens (Lien Law, §§ 5, 12). There is no such language in the statute; on the contrary, its provisions expressly adopt the opposite view, that the right to file a public improvement lien may pass to an assignee or legal representative.

Public improvement liens have always been governed by a completely separate statutory scheme. This fact was somewhat obscured by the combination of the public lien and private lien statutes into a single statute by chapter 418 of the Laws of 1897 but the basic provisions as to public and private liens were still kept separate in that law.

Prior to 1878, there was no right to a lien upon a public improvement. It was held that the private improvement lien statutes did not apply since the courts would not allow a public building to be sold to satisfy a lien (*Bell* v. *Mayor*, 105 N. Y. 139). Chapter 315 of the Laws of 1878 provided for the first time for liens for laborers and materialmen upon public improvements under contracts made with any city of the State. Subse-

quently, this was extended to all municipal corporations and thereafter it was extended to include the State itself (L. 1891, ch. 255; L. 1902, ch. 37).

The 1878 statute expressly recognized the assignability of the right to file a public improvement lien. Section 1 of the statute provided that: "Any person or persons who shall hereafter as laborer, mechanic, merchant, or trader, in pursuance of, or in conformity with the terms of any contract made between any person or persons, and any incorporated city in the state of New York, perform any labor or furnish any material toward the performance or completion of any contract made with said city, on complying with the second section of this act, shall have a lien for the value of such labor or materials or either, upon the moneys in the control of the said city, due or to grow due under said contract * * * and these liens may be filed and become an absolute lien to the full and par value of all such work and materials, to the extent of the amount due or to grow due on said contract, *in favor of every person or persons who shall be employed or furnish materials* to the person or persons with whom the said contract with said city is made, or the sub-contractors of said person or persons, *their assigns or legal representatives*" (emphasis added).

Section 2 of the chapter provided for the filing of a notice with the head of a department or bureau having charge of the work by "any claimant". It will be noted that the notice was not required to be filed by the person performing the labor or supplying the materials, but that it could be filed by anyone claiming to be entitled to a lien. Under section 1, this included the assignees and legal representatives of the persons performing the labor or supplying the materials.

It is thus apparent that in drafting the first public improvement lien statute in 1878, the draftsmen, having before them the decision of the Court of Appeals in 1871 that an assignee could not file a lien for work done by his assignor, under a private improvement lien statute, took pains to make it clear that that rule should not apply to public improvement claims under the new statute.

It may be argued that the words "their assigns or legal representatives" refer to the contractors or subcontractors rather than to the persons performing the labor and supplying the materials but this is an unnatural reading of the section since the section is primarily concerned with the rights of the laborers and materialmen. However, we need not speculate as to the intention of the Legislature in this regard. Any contention that the words "their assigns or legal representatives"

refer to the contractors and subcontractors rather than to the laborers and materialmen is completely answered by the statute itself. Section 14 of chapter 315 of the Laws of 1878 provided that: " The term ' contractor ', as used in this act, shall be construed as meaning the person with whom the contract with the said city is made, his assigns or legal representatives ". Presumably, this provision was equally applicable to a subcontractor, who was also a contractor, although his contract was subordinate to that of the principal contractor. The substitution of the assignee or legal representative of a contractor or subcontractor was thus specifically covered by section 14 of the 1878 statute. To construe the words in section 1 of the statute as referring to the same thing would make them a useless repetition. The conclusion is inescapable that the words " their assigns or legal representatives " in section 1 refer to the assignees or representatives of the persons furnishing labor or materials.

Furthermore, it should be noted that under section 1, the laborers and materialmen are declared to have a lien at once upon the performance of their labor or the supplying of the materials, the lien to become " absolute " upon the filing of notice, in accordance with section 2. The statute thus recognizes the existence of an inchoate lien even before the filing of the notice. This is an assignable right (see authorities, *supra*).

When the Lien Law was revised by the Statutory Revision Commission in 1897, the provisions for private and public liens were combined in a single statute but the separate sections dealing with public improvement liens were retained. The substance of sections 1 and 2 of chapter 315 of the Laws of 1878 became sections 5 and 12 of the new Lien Law (ch. 49 of the General Laws; L. 1897, ch. 418). The Revisers' Note to section 5 states: " The lien here created differs from the ordinary mechanics' lien, since it does not attach to the real property improved but to the money due or to become due the contractor under his contract. The object of the present law as retained in this section is to secure for the laborer or material man his just rights in the money to be paid for a public improvement constructed under a contract " (Report of the Commissioners of Statutory Revision [1897], p. 394; 3 Silvernail, Annotations to the General Laws and Constitution of New York, p. 2656 [1901]).

The Revisers further noted that they did not intend to change the meaning of the provisions of the Public Improvement Lien Law of 1878 but that they had " attempted to express in a few words the lien created by L. 1878, Ch. 315, sec. 1 " (Report, *supra*, p. 394; 3 Silvernail, *supra*, p. 2656). The Revisers' Note to section 12 of the Lien Law reads: " This section is a substi-

tute for L. 1878, Ch. 315, secs. 2, 3  *  *  *  There is no substantial change made '' (Report, *supra,* p. 401; 3 Silvernail, *supra,* p. 2676).

Unfortunately, the Revisers, in their effort to compress the substance of section 1 of the pre-existing statute, inadvertently omitted from section 5 of the new law the word '' assigns '' and retained only the phrase '' or legal representative ''. This left the meaning of the phrase in section 5 somewhat obscure. It can be understood only by going back to the Laws of 1878 from which it was derived.

The relevant part of the first sentence of section 12 of the 1897 statute read (as it still reads today): '' a person performing work for or furnishing materials to a contractor, his subcontractor, assignee or legal representative, may file a notice of lien with the head of the department or bureau having charge of such construction ''. It will be noted that, in section 12, the whole phrase was carried over from the 1878 statute but the singular '' person '' was used instead of the combined singular and plural used in the 1878 statute ('' person or persons '' who '' perform any labor or furnish any material '') and therefore the plural form '' their assigns or legal representatives '' in the 1878 statute was changed to the singular '' assignee or legal representative '' in section 12 of the 1897 statute. However, while the word '' their '' was omitted, the singular form '' his '' was not substituted; also the word '' or '' which had separated the prime contractors from the subcontractors in the original text was omitted. As a result, the text of the new section 12 was grammatically incomplete. It is impossible to determine the meaning of the quoted words of section 12 without going back to the 1878 statute from which the Revisers derived the text and which they stated in their notes they did not intend to change in substance or meaning. Upon reading the text in the light of the 1878 statute, it becomes clear that, in order to give effect to the legislative intent, section 12 must be read as meaning: '' a person performing work for or furnishing materials to a contractor, [or] his subcontractor, [or his, i.e., such person's] assignee or legal representative may file a notice of lien '' etc. The Board of Statutory Consolidation in 1909 and the revisers in 1929 made no change in the provisions of section 5 and section 12 as adopted in 1897, so far as here relevant, and these provisions have remained unchanged to the present time.

I therefore conclude that, at least with respect to a public improvement, a person supplying labor or materials may, in connection with an assignment of his claim, assign the right to file a lien and a notice of lien may accordingly be filed by the assignee.

I would therefore affirm the order appealed from.

GOLDMAN, McCLUSKY and HENRY, JJ., concur with WILLIAMS, P. J.; HALPERN, J., dissents and votes to affirm in opinion.

Order modified by dismissing the complaint on the merits as to the defendant-appellant Travelers Indemnity Company and by directing that the amount of damages which the plaintiff is entitled to recover from the defendant-appellant Ek & Son Construction Co., Inc., be determined by an assessment before the court and a jury and, as so modified, affirmed, without costs of this appeal to any party.