**MARV LAXER ASSOCIATES, INC., Plaintiff,**

v.

**MOREDALL REALTY CORPORATION, Carney Electric Construction Corp., Fire Control, Inc., Avon Electrical Supplies, Inc., J. J. Hass Co., Inc., Joint Industry Board of the Electrical Industry, Morell-Brown Plastering Corp., James King & Sons, Inc., and J. C. Penney Company, Inc., Defendants.**

**J. C. PENNEY COMPANY, INC., Defendant and Interpleading Plaintiff,**

v.

**UNITED STATES of America, Peninsula National Bank, Carneco, Inc., and Finkel, Goldstein & Berzow, Interpleaded Defendants.**

**No. 80 Civ. 2575 (RWS).**

United States District Court, S. D. New York.

June 25, 1981.

Arutt, Nachamie, Benjamin, Lazar & Kirschner, P. C., New York City, for plaintiff Marv Laxer Associates, Inc.

Barry L. Mendelson, New York City, for defendant and interpleading plaintiff, J. C. Penney Co., Inc. and defendant Moredall Realty Corp.

Hall, McNicol, Hamilton, Clark & Murray, New York City, for defendant James King & Sons, Inc.

Goldstein & Rubinton, Huntington, N. Y., for defendant Avon Elec. Supplies, Inc.

Finkel, Goldstein & Berzow, New York City, for defendants Carney Elec. Const. Corp., Carneco, Inc. and Carney Elec. Constr. Corp., D. I. P.; Steven L. Plutzer, New York City, of counsel.

Goldman, Costa & Getman, Buffalo, N. Y., for defendant Fire Controls, a Div. of Fire Control, Inc.

Donald F. Menagh, New York City, for defendant Joint Industry Bd. of the Elec. Industry.

Zalkin, Rodin & Goodman, New York City, for interpleaded defendant Peninsula Nat. Bank; Leonard Zalkin, Harold N. Schwinger, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., for interpleaded defendant U. S. A; Harvey J. Wolkoff, Asst. U. S. Atty., of counsel.

## OPINION

SWEET, District Judge.

Interpleaded defendants United States of America ("the government"), and Peninsula National Bank ("the Bank") have moved for summary judgment. Cross motions for similar relief have been made by plaintiff Marv Laxer Associates, Inc. ("Laxer") and by interpleaded defendants Carneco, Inc. ("Carneco"), Carney Electric Construction Corp., Debtor-in-Possession ("Carney DIP") and Finkel, Goldstein & Berzow ("Finkel"), and defendants Carney Electric Construction Corp. ("Carney"), Fire Control, Inc. ("Fire Control"), and Avon Electrical Supplies, Inc. ("Avon"). Defendant Joint Industry Board of the Electrical Industry ("Joint Industry Board") has submitted opposition to the Bank's motion. These motions, cross-motions and opposition submissions properly present for resolution by the court the priorities between claimants to funds which resulted from the construction of various improvements to real property at the J. C. Penney Building in midtown Manhattan. The claimants are subcontractors, materialmen, a bank, the government, attorneys and union representatives. Skilled counsel have greatly assisted the court in unravelling what initially appears to be a complicated tapestry of parties, facts, and contentions. The motions are granted in part and denied in part in accordance with the findings of fact and conclusions of law which follow. In the absence of an agreement of the parties, a Magistrate will calculate any amounts to be paid in accordance with this opinion, after which a final judgment will be entered.

### Prior Proceedings

This is an action to foreclose mechanics' liens arising from electrical work consisting of labor and services and furnishing of materials at the Penney building, located at 1633 Broadway, New York City ("the Premises"). It was originally instituted in November, 1978 in the Supreme Court of the State of New York, County of New York by Laxer. Thereafter, answers were interposed on behalf of J. C. Penney Company, Inc. ("Penney"), James King & Sons, Inc. ("King"), Fire Control and Morell-Brown Plastering Corp. An action was also instituted in the same court by Avon. Thereafter by stipulation dated February 20, 1980, this action was discontinued against the defendants J. J. Hass Co., Inc. and Morell-Brown Plastering Corp.

In or about April, 1980, the defendant and interpleading plaintiff Penney served an interpleader summons and complaint upon the remaining defendants with an order to show cause tendering the sum of $285,000 into court, pursuant to § 55 of the New York Lien Law, to satisfy the liens and claims of all the parties thereto. By a

notice of removal dated May 6, 1980, the government on its petition removed this action from the state court.

The $285,000 settlement fund has been deposited with the registry of this court, pursuant to a stipulation and order dated September 16, 1980, filed herein on September 23, 1980. The relevant effect of these proceedings is to terminate this action against the defendants Moredall Realty Corp., King and Penney, to discharge all liens and claims, as of record or otherwise, and to have them attached in lieu of the Premises to the $285,000 settlement fund, preserving for the court the determination of the claims and rights and respective priorities of the remaining parties in that fund.

### The Facts

In October, 1977, Carney and Carneco entered into a written subcontract with defendant King and agreed to furnish and supply all labor and materials needed in connection with the electrical work to be performed within the Premises. These premises were leased to and occupied by Penney, which had earlier entered into a written contract with King, as general contractor, to perform and complete construction work at the Premises. Carney and Carneco were the electrical subcontractors selected by King and Penney.

Carney and Carneco were separate corporations maintaining separate offices but having some of the same officers and shareholders. Carney was not licensed to perform electrical work within New York City, while Carneco was so licensed. Carney and Carneco employed different individuals to perform labor. Carney and Carneco arranged that Carney would perform all supervisory and managerial functions upon the Penney project, including the purchasing of all necessary materials, the preparation of all plans and change orders, and all invoicing to King. Carneco provided the manpower and labor required. Carneco charged Carney for the labor it provided, and Carney in turn paid Carneco for the cost of the labor.

The amount of the original subcontract between Carney and Carneco on the one hand and King on the other was $675,000. Between October 1977 and August 1978 there were more than 300 separate change orders changing the requirements and specifications under the original subcontract and in the aggregate totalling approximately $678,475. Carney sent invoices to King up to July 14, 1978 when it filed a petition under Chapter XI of the Federal Bankruptcy Act. Thereafter, the contract was performed and all further invoicing was rendered by Carney DIP.

The Bank had accepted an assignment of accounts receivable by Carney and in March, 1975 filed UCC–1's with respect to these assignments and its security interest. Assignments of accounts receivable and financing statements accepted by the Bank from Carneco (UCC–1's) were filed in January, 1977.

On March 7, 1978 the government filed a notice of levy in the amount of $34,215.38 with respect to moneys payable by King to Carney and in the amount of $163,256.57 with respect to moneys payable by King to Carneco. These actions by the government resulted from the failure of Carneco in 1977 to pay $90,742.84 in federal withholding taxes arising out of wages for work on the Penney project in 1977, and a similar failure by Carneco in 1978 to pay $6,301.50, as well as assessments for unpaid taxes, arising from work performed on other unrelated projects, as of February 15, 1980 against Carneco in the amount of $212,916.51 and Carney in the amount of $216,760.60. On June 2, 1978 the government served two notices of final demand on King which have not been honored. No suit for wrongful levy or request for return of property has been made in response to these levies.

During the course of its performance under the subcontract, Carney (and after July 14, 1978 Carney DIP) purchased necessary materials and supplies from various suppliers including, but not limited to Laxer, Avon and Fire Control. All three of these suppliers furnished materials and supplies to Carney and subsequently filed mechan-

ics' liens pursuant to Article 2 of the New York Lien Law, prior to the time that Carney filed its petition under Chapter XI of the Bankruptcy Act, in the respective amounts of $15,100.43, $22,787.93 and $4,662.00. In March, 1978, following some controversy between it and King over the amount due on work performed on the Premises, Carney itself had filed a mechanic's lien in the amount of $322,419.28.

In addition, the Joint Industry Board filed a mechanic's lien in the amount of $48,652.24 as assignee of its members, claiming that certain pension and welfare benefits owing to the individual members have not been paid by Carney.

By October 1978 Carney (and subsequently Carney DIP) had invoiced King for a total of $1,353,474 (representing the amount of the original subcontract and all change orders). Of this amount a total of approximately $871,000 was paid by King. As a result, Carney DIP claimed that there was due and owing from King approximately $482,000. This amount was subsequently reduced to approximately $408,000 through the issuance of credits and adjustments.

Unable to collect the amount which it claimed was due, Carney DIP obtained an order from the Bankruptcy Court (Judge Parente) to commence an arbitration against King as required under the terms of the subcontract. Finkel was retained as attorney for Carney DIP in the arbitration. The order of retention signed by the Bankruptcy Court provided that Finkel would receive a fee equal to 15% of any recovery by judgment award or settlement.

Thereafter, Carney DIP (in its own right and as successor in interest to Carney) and Carneco commenced the arbitration against King seeking the $408,000. King opposed the arbitration and sought a stay in the Supreme Court, New York County. The court ordered King to proceed to arbitration. During the course of the arbitration King filed a counterclaim in the approximate sum of $600,000, alleging that Carney and Carneco had not properly performed or completed the contract and that King was required to have allegedly defective work

corrected and completed by others at a substantial cost. King also commenced a separate arbitration against Penney claiming that if Carney DIP and Carneco were ultimately successful at the arbitration and obtained an award against King, Penney should be required to reimburse King for the amount recovered. King then moved to stay the arbitration hearing with Carney and consolidate the Carney arbitration with the Penney arbitration. King's motion to consolidate was granted and confirmed on appeal.

In the meantime, Laxer had commenced a mechanic's lien foreclosure action in Supreme Court, New York County, seeking to foreclose its filed mechanic's lien upon the Premises. A subsequent mechanic's lien foreclosure action was also commenced by Avon. Carney, Penney and King were named as defendants in both actions and Finkel again represented Carney.

In view of the complexity of the issues that were involved in the consolidated arbitration, Carney DIP, King and Penney devised a detailed settlement agreement which was subsequently executed by King, Carney, Carneco and Penney in April, 1980. The agreement included, among others, the following provisions:

(a) The agreed value of the materials and labor furnished by Carney, Carney DIP and/or Carneco was fixed at $285,000 ("the Settlement Fund"), including the sum of $260,000 for the period prior to July 14, 1978 (the date Carney filed its bankruptcy petition), and the sum of $25,000 for the period after July 14, 1978;

(b) The amount of the Settlement Fund was made subject to the approval of the Bankruptcy Court presiding over the Carney bankruptcy and the approval of the court where the Laxer mechanic's lien foreclosure action was pending;

(c) The Settlement Fund was to be deposited with the court, subject to the claims of the various competing claimants, to be distributed in accordance with the provisions of the controlling state law; and

(d) The remaining claimants not already named in the Laxer action were to be interpleaded so that all competing claimants would be brought together before the same judicial forum.

The settlement agreement was approved by the Bankruptcy Court. An interpleader action was commenced by Penney wherein the government, the Bank, Carneco, Carney DIP and Finkel were named as interpleaded defendants. After receiving service, the government removed the interpleader action to this court. Pursuant to order of this court, as provided in the settlement agreement, Penney deposited the Settlement Fund with the clerk of this court. The Settlement Fund has been substituted for the Premises, and it has been stipulated and agreed by the parties that all of their respective claims shall be limited to participation in the Settlement Fund.

*Conclusions*

■ It is virtually undisputed that the New York statutory scheme establishes an Article 2 mechanic's lien under Lien Law § 55 over funds deposited which are substituted for the property upon which the work has been performed. Such is the holding of *Onondaga Commercial Dry Wall Corp. v. 150 Clinton St., Inc.*, 25 N.Y.2d 106, 302 N.Y.S.2d 795, 250 N.E.2d 211 (1969). Therefore Carney, Laxer, Avon and Fire Control initially share pro rata in the $285,-000 fund.[1] Since the amount of these liens totals $374,964.84, exceeding the $285,000 funds, each shares pro rata, and the Carney lien results in a share of $251,772.57.

■ The only significant opposition to this conclusion was advanced by the government which alleged that only by a challenge to its levy under the appropriate sections of Title 26 U.S.C. can its rights be set aside. This argument of the government has since been withdrawn by letter of May 19, 1981. In any event, as Carney points out, the government's levy was on moneys in King's possession, while the fund deposited under Lien Law § 55 stands in lieu of the property. This characterization of the fund is properly a matter of state law. *See United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958); *Aquilino v. United States*, 10 N.Y.2d 271, 219 N.Y.S.2d 254, 256, 176 N.E.2d 826, 827 (1961). Further, the government does not distinguish *Onondaga* which is controlling.

■ No authority has been cited under which the Joint Industry Board has successfully asserted a materialman's lien claim on behalf of its members in the absence of such a lien having been filed and subsequently assigned. *Courtney v. Elgaen, Inc.*, N.Y.L.J. Jan. 18, 1979 at 14. col. 1, (Sup.Ct. Nassau Co., Jan. 13, 1979) bars such a claim and has not been distinguished by the Joint Industry Board. No support has been advanced for the statutory interpretation sought by the Joint Industry Board, namely, that the personal right of the laborer to file his lien encompasses a filing by his trustee. *See also Hall v. Carl G. Ek & Son Constr. Co.*, 17 A.D.2d 558, 236 N.Y.S.2d 555 (4th Dep't), *aff'd*, 13 N.Y.2d 825, 242 N.Y. S.2d 352, 192 N.E.2d 227 (1963). Therefore the Joint Industry Board is not entitled to share the Settlement Fund pro rata with the other materialmen.

With the Article 2 liens thus dealt with, the priority must be established with respect to the Article 3A trust fund established by Lien Law § 70 over the $251,-772.57 held for Carney arising out of its mechanic's lien.

---

1. The court has considered and rejected the claim of Carney DIP to $25,000 of the Fund, the amount allocated to the work performed after July 14, 1978, the date of filing the Chapter XI proceeding. The settlement agreement, it is true, reflects that the $285,000 Fund covers material and labor worth $260,000 provided to King by Carney before its bankruptcy on July 14, 1978, and $25,000 provided by Carney DIP thereafter. However, the agreement does not set the $25,000 off from the reach of all of the liens therein acknowledged. On the contrary, throughout the agreement the Fund subject to the liens is regarded as the full $285,000. Likewise, such a claim was in effect waived by Paragraph 5 of the stipulation and order signed by this court on September 16, 1980, which subjected the fund to the claims of the mechanic's lien.

The Lien Law § 71(2) fails to include attorneys in its classes of those entitled to recover from a statutory trust fund. Such a lien based on the creation of a settlement fund, arises, if at all, out of Judiciary Law § 475. Two questions are therefore presented by Finkel's claims here: first, have the requirements of the Judiciary Law been met in order to create an attorney's lien; second, assuming a properly established attorney's lien, where does such a lien rank with respect to the schedule of those entitled to share in the statutory fund.

■ The Bank and the government oppose Finkel's claim asserting that the Settlement Fund was established as a result of an arbitration and not as required by the Judiciary Law. Section 475 of the Judiciary Law provides:

From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

*United States v. J. H. W. & Gitlitz Deli & Bar, Inc.*, 499 F.Supp. 1010 (S.D.N.Y.1980) and *Avalon Fabrics, Inc. v. Raymill Corporation*, 96 N.Y.S.2d 50 (Sup.Ct.N.Y.Co.1950) are cited to support the position of the government and the Bank. However, in *Avalon* it was specifically pointed out that an attorney's charging lien attaches to the proceeds recovered as a result of arbitration in the course of which an application was made to the State Supreme Court. The Court noted that under the former Section 1459 of the Civil Practice Act (now 7502 CPLR), an arbitration is elevated to the status of "special proceeding" upon the making of an application to a court of competent jurisdiction. This principle was acknowledged by Judge Weinfeld in the *Gitlitz Deli* case, *supra*, where, at 1014, n.7, the court stated:

... *Avalon Fabrics, Inc. v. Raymill Fabric Corporation*, 96 N.Y.S.2d 50, 53 (Sup. Ct.1950) (arbitration not 'proceeding' under Section 475 until some related application is made to Supreme Court).

In the present case, after Carney DIP and Carneco demanded arbitration with King, King made application to the Supreme Court, New York County for a permanent stay of the arbitration. King's application was eventually denied, and the arbitration proceeded before the American Arbitration Association. Thereafter, King made a further application to the Supreme Court, New York County to consolidate the Carney arbitration with a separate arbitration commenced by King against Penney. King's application to consolidate was ultimately granted by the Supreme Court. Penney then took an appeal to the Appellate Division, First Department, resulting in an affirmance of the Supreme Court order granting consolidation. These activities raise the arbitration to the level of a "special proceeding."

■ Thus, Finkel has an enforceable charging lien under Section 475 of the Judiciary Law which attaches to the Settlement Fund, but its ranking in priority must be determined. Fortunately, this court has the benefit of the Honorable Milton Pollack's opinion in *Ingalls Iron Works Co. v. Fehlhaber Corp.*, 337 F.Supp. 1085 (S.D.N.Y.1972). I see no basis to distinguish the issue there presented from the $251,772.19 Carney trust fund here, nor do I see any reason to depart from Judge Pollack's careful analysis. Finkel's claim, whatever it may be in amount, comes first, having come into existence at the time of the initiation of the special proceeding. The remaining trust fund claimants will share as provided by the statute.

Section 71 of the New York Lien Law sets forth those persons who are "beneficiaries" of the trust assets held by a subcontractor under § 70:

> 2. The trust assets of which a contractor or subcontractor is trustee shall be held and applied for the following expenditures arising out of the improvement of real property or public improvement and incurred in the performance of his contract or subcontract, as the case may be:
>
> (a) payment of claims of subcontractors . . . . ;
>
> (b) payment of the amount of taxes based on payrolls including such persons and withheld or required to be withheld . . . . ;
>
> (c) payment of taxes . . . due by reason of the employment out of which such claims arose . . . .

Accordingly, under § 71, the United States is entitled to payment of its taxes arising from the improvement to the Premises pursuant to the subcontract, namely, $90,742.84 in 1977, and $6,301.50 in 1978. In addition, Carneco, as a joint subcontractor under the agreement, has a claim against Carney for unpaid sums necessary to pay the salaries of its laborers and their pension benefits and its Federal and State taxes. Therefore, Carneco is also a "beneficiary" under § 71(1).

The amount of Carneco's claim against Carney is at least: (1) the amount that Carney should have paid to it to pay its federal taxes and did not—$97,044.34; (2) the amount of Carneco's obligations to the union for pension benefits that Carney failed to pay over to Carneco—$48,652.24; and (3) any unpaid amounts that Carneco owed its employees for their salaries, amounts not yet specified. The government's Article 3A claim discharges Carneco's right to recover from Carney the $97,-044.34 in unpaid federal taxes. Nonetheless, Carneco remains an Article 3A beneficiary of Carney's trust assets in the amount of the $48,652.24 in unpaid pension benefits,

leaving aside any as yet undetermined salary obligations.

Carneco's employees could have filed claims on their own behalf to the $48,652.24 after it is distributed to Carneco under § 71(2)(d) of the Lien Law, which permits an employee to sue his "employer" for the type of "benefits or wage supplements" for which the union asserts a claim here:

> payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnish such supplements, to the extent that the trustee, as employer, is obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party . . . .

However, Carneco's employees have not asserted such a claim, and it is long since time-barred under the provisions of § 77(2) of the Lien Law. Accordingly, while Carneco is entitled to payment from Carney of the $48,652.24 as Article 3A trust funds, any obligation to pay this money to its employees is time-barred, and Carneco holds this money as its own.

Accordingly, as the above reflects, the United States and Carneco are the only two trust beneficiaries of the fund held by Carney. Section 77(8) of the Lien Law provides the order in which they take:

> [I]n an action to enforce a trust, the following classes of trust claims shall have preference, in the order named: (a) trust claims for taxes . . . and for amounts of taxes withheld or required to be withheld . . . .

Accordingly, the government is entitled to priority payment of its $97,044.34 in federal taxes from the interpleaded fund, while Carneco is entitled to $48,652.24.[2]

What remains is subject to the claim of the Bank as an assignee of Carney and Carneco. *Cf. Monroe Savings Bank v. First Nat'l Bank of Waterloo,* 50 A.D.2d 314, 377 N.Y.S.2d 827, 830–31 (4th Dep't 1976). Within twenty (20) days the parties will

---

2. The government has conceded that the Bank's security interest in Carney's receivables is entitled to priority against the government's tax lien against Carney, since it was perfected prior in time.

submit a judgment on notice if agreement can be reached with respect to the calculations of any previously unspecified amounts. If no such agreement is reached, an order on notice will be submitted for reference to a Magistrate to determine such amounts and to recommend a form of judgment.

IT IS SO ORDERED.