In the Matter of the Petition of DAVID BENNETT KING et al.,
Appellants, to Enforce an Attorney's Lien.

THEODORE C. ENGLISH, as Substituted Trustee under the Will
of BENJAMIN WILLIAMSON, Deceased, Respondent.

1. ATTORNEY AND CLIENT — WHEN LIEN FOR SERVICES NOT WAIVED.
The acts of attorneys in drawing and entering an order in the Supreme
Court at the conclusion of an action by a trustee to recover wrongfully
hypothecated securities, directing a trust company to whom they had
been delivered pending the litigation subject to the order of the court to
deliver them to the trustee and in sending their bill for services and dis-
bursements to him, accompanied by a letter in which they stated that they
had no desire to impress a lien upon the fund, but desired him to send a
check for the amount, do not constitute a waiver of their attorney's lien
upon the securities, and upon the refusal of the trustee to pay the bill
they have the right to elect to establish their lien while the securities are
yet in the hands of the trust company and no rights of third parties have
intervened.

2. POWER OF COURT TO DETERMINE AMOUNT OF LIEN.   Under section
66 of the Code of Civil Procedure, as amended, providing that " the court
upon the petition of the client or attorney may determine and enforce
the lien," the court not only has jurisdiction but it must either itself or
by a reference in its discretion, determine the amount of a client's
indebtedness to his attorney in a proceeding properly instituted after the
amendment took effect although the services were principally rendered
prior thereto, since the amendment provides a new remedy for an existing
right, is not unconstitutional and the parties are not entitled to a jury
trial.

3. ENFORCEMENT OF LIEN UPON SECURITIES SOUGHT TO BE REMOVED
FROM THE STATE BY FOREIGN TRUSTEE.   Where a foreign trustee desires
to remove securities under the custody and control of the courts of this
state into another state and a lien is claimed thereon by attorneys for
services rendered in this state in an action previously pending herein,
which resulted in a recovery by the trustee of such securities, the courts
of this state have jurisdiction and the power to determine the amount for
which the lien should be established, and the rule that contracts made by
foreign executors or administrators for the benefit of an estate do not bind
or create a charge upon the assets of the estate has no application.

4. APPEAL — ORDER DENYING APPLICATION TO DETERMINE AMOUNT
OF LIEN A FINAL ORDER.   Where the Appellate Division reverses an
order of Special Term appointing a referee to ascertain and report the
value of the petitioners' services in a proceeding to enforce an attorney's

lien and in addition denies the application, thus depriving the petitioners of their lien, it becomes a final order in a special proceeding and is appeal-able to the Court of Appeals.

*Matter of King*, 61 App. Div. 152, modified.

(Argued June 6, 1901; decided July 10, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 20, 1901, which reversed an order of Special Term appointing a referee to hear and report, with his opinion, the compensa-tion which should be allowed the petitioners for their services as attorneys, and denied the prayer of said petitioners to have their lien determined and enforced.

The facts, so far as material, are stated in the opinion.

*David Bennett King* and *Henry W. Jessup*, appellants, in person. The court had jurisdiction of this proceeding and of the respondent. (Code Civ. Pro. § 66.) The fact that respondent is a trustee does not affect the jurisdiction of the court to determine and enforce the lien. (*Matter of Knapp*, 85 N. Y. 284; *Lee* v. *Van Voorhis*, 78 Hun, 575; *Read* v. *Duffer*, 6 T. R. 362; *New* v. *Nicoll*, 73 N. Y. 127; *O'Brien* v. *Jackson*, 167 N. Y. 31; *T. G. T. Co.* v. *C., B. & Q. R. R. Co.*, 123 N. Y. 37; *Noyes* v. *Blakeman*, 6 N. Y. 567; *Randall* v. *Dusenbury*, 7 J. & S. 174; 63 N. Y. 645.) This is the proper procedure. (*Rochfort* v. *Met. St. Ry. Co.*, 50 App. Div. 261.) The petitioners did not waive their right to a lien. (*Goodrich* v. *McDonald*, 112 N. Y. 157; *Peri* v. *N. Y. C. & H. R. R. R. Co.*, 152 N. Y. 521; *Lee* v. *V. O. Co.*, 126 N. Y. 579; *Matter of Knapp*, 85 N. Y. 284.) Section 66 of the Code of Civil Procedure is not unconstitutional. (*Thompson* v. *E. R. R. Co.*, 45 N. Y. 468; *Sheppard* v. *Steele*, 43 N. Y. 52; *Perry* v. *Board of Missions*, 102 N. Y. 99; *Fowler* v. *M. L. Ins. Co.*, 28 Hun, 195; *Matter of H——, an Attorney*, 87 N. Y. 521.)

*W. Arrowsmith* for respondent. The order is not appeal-able to this court and the appeal therefrom should be dismissed. (Code Civ. Pro. § 66; *Martin* v. *W. Hotel Co.*, 70 N. Y. 101;

*Douglass* v. *Haberstro*, 82 N. Y. 572; *Cohn* v. *Baldwin*, 141 N. Y. 563; *Merriam* v. *W. & P. L. Co.*, 155 N. Y. 136; *People* v. *O'Brien*, 164 N. Y. 57.) The application should have been dismissed at Special Term as not within the provision of the amendment of 1899 of section 66 of the Code. (*Adee* v. *Adee*, 55 App. Div. 63; *Matter of Rowland*, 55 App. Div. 66; *Goodrich* v. *McDonald*, 112 N. Y. 157; *Dolliver* v. *A. S. B. Co.*, 32 Misc. Rep. 264.) A foreign executor or trustee cannot be sued in the courts of the state of New York in his representative capacity, and an allegation that he has assets of his testator in his possession in this state does not alter the rule, or confer jurisdiction. (*Ferguson* v. *Harrison*, 27 Misc. Rep. 380; *Flandrow* v. *Hammond*, 13 App. Div. 325; *Field* v. *Gibson*, 20 Hun, 274; *Murphy* v. *Hall*, 38 Hun, 528; *McNamara* v. *Dwyer*, 7 Paige's Ch. 239; *Austin* v. *Munro*, 47 N. Y. 361; *Ferrin* v. *Myrick*, 41 N. Y. 315; *Brown* v. *Brown*, 1 Barb. Ch. 189; *Collins* v. *Steuart*, 2 App. Div. 271.) The petition should have been denied because the appellants expressly relinquished and waived any lien they supposed they were entitled to. (*Goodrich* v. *McDonald*, 112 N. Y. 166.) An attorney does not have a lien for services upon property in his hands belonging to the estate he represents for services rendered therein. (*De Lamater* v. *McCaskie*, 4 Dem. 549; *Smith* v. *C. T. Co.*, 4 Dem. 75; *Murphy* v. *Hall*, 38 Hun, 528; *Estate of Hoyt*, 12 Civ. Pro. Rep. 208.) The contracts of executors, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration as for services rendered, are the personal contracts of the executors and do not bind the estate, although the executors could properly pay for same from the assets and be allowed for the expenditures in the settlement of their accounts. (*Ferrin* v. *Myrick*, 41 N. Y. 315; *Austin* v. *Munro*, 47 N. Y. 360; *O'Brien* v. *Jackson*, 167 N. Y. 31.)

HAIGHT, J. The facts are without substantial dispute. It appears that Benjamin Williamson, a resident of the state of

New Jersey, died, leaving a last will and testament, which was duly admitted to probate in that state, which will, by its terms, created a trust and appointed Isaac H. Williamson as trustee. The assets of the trust consisted chiefly of railroad stocks and bonds, and were subsequently removed from the jurisdiction of the court in New Jersey to the state of New York, where they were wrongfully hypothecated by the trustee with a firm of brokers as security for margins on speculations in which he was engaged. Subsequently, the trustee was removed by an order of the court of New Jersey, and the respondent, Theodore C. English, was appointed in his place and stead to carry out the uncompleted trust. The new trustee so appointed came to the city of New York and employed the petitioners, who are attorneys at law, to recover the securities wrongfully appropriated by the former trustee. The petitioners thereupon brought an action in the Supreme Court of this state against the brokers with whom the securities had been hypothecated, and after a long litigation, extending over a period of about four years, succeeded in recovering securities of the value of upwards of seventy thousand dollars. Pending this litigation the securities were brought into court and turned over to the Central Trust Company to hold subject to the further order of the court. After the completion of their services the petitioners presented their bill to the trustee and demanded its payment, but the trustee regarding it as exorbitant refused to pay. They thereupon instituted these proceedings under section 66 of the Code of Civil Procedure in order to have the amount of their lien as attorneys determined and enforced. The Special Term appointed a referee to ascertain and report the value of the petitioners' services, but the Appellate Division reversed the order and denied the petitioners' application.

The Appellate Division appears to have been of the opinion that the petitioners had a lien upon the securities recovered for the amount of their services and disbursements, but that they had waived it, and for that reason their petition should be denied. The acts out of which the court found a waiver of

the lien consist, *first*, in the attorneys drawing and entering an
order in the Supreme Court at the conclusion of the litigation
directing the trust company to deliver the securities over to
the new trustee; and, *secondly*, in inclosing their bill for
services and disbursements to the trustee, accompanied by a
letter in which they stated that they had no desire to impress
a lien upon the fund, but desired him to send a check for the
amount. With reference to the order entered by the attorneys
it appears to be the usual order entered in cases of this
character. The litigation was over the title to the securities
which had been brought into court and placed in the custody
of the trust company to await the result of the litigation which
would determine the parties to whom the securities belonged.
The litigation having resulted in favor of the trustee and it
having been adjudged that he was entitled to the securities, the
order was proper, and to our minds contains no element of
waiver of the attorneys' lien or of an intention to waive on
their part. As to the letter, they evidently supposed that the
trustee would send them a check paying their bill, and, there-
fore, they did not care to impress a lien upon the fund, but
upon the refusal of the trustee to pay their bill they then
elected to establish their lien while the securities were yet
in the hands of the trust company, and this, we think, they
had the right to do. The case of *Goodrich* v. *McDonald*
(112 N. Y. 157) was very different. In that case the attorney
had died and his son had been appointed administrator of his
estate. When the money was about to be paid over on the
judgment he was notified of the fact and asked to be present
and receive his portion of the money. Thereupon he wrote
a letter to the person having the satisfaction of the judgment
in charge, saying, " While my father's estate is interested in
the judgment, I am willing to look to Mrs. Graves alone for
the share of the judgment coming to us, and she may, there-
fore, discharge the judgment and receive all proceeds after
settling with you so far as the claims of the estate are con-
cerned." Thereupon the money was paid over to her and she
subsequently invested the money in the purchase of a bond

and mortgage, and thereupon made an agreement with her mother by which she was to have the proceeds of the mortgage upon furnishing her with certain funds and necessary support. In that case the court held that the attorney, through his administrator, had waived his lien. But in this case we have no rights of third parties intervening. The securities had never been delivered over by the trust company and no letter had ever been written to the trust company directing such delivery without satisfying the attorney's lien.

The claim is further made by a minority of the Appellate Division that section 66 of the Code does not give the court jurisdiction to determine the amount of the indebtedness of the client to his attorney. But with reference to this contention we have the express provision of the Code as amended in 1899. It provides that " The court, upon the petition of the client or attorney, may determine and enforce the lien." The lien is given by the provisions of the section which were in force at the time the services were rendered. The new amendment took place after the services were principally performed, but before these proceedings were instituted. It is a new remedy for the enforcement of an existing right, and is, therefore, available to the petitioners and is not subject to the objection raised in the case of *Goodrich* v. *McDonald* (*supra*). We do not understand the clause to be violative of the provisions of the Constitution, or that the parties were entitled to a jury trial. In this case the petitioners had a lien created by statute. The proceedings provided for by the Code are instituted by a petition and are in the nature of the foreclosure of a lien. The appointment of a referee may have been in the discretion of the court. The Special Term undoubtedly could have retained the proceedings, tried out the question as to the value of the petitioners' services and determined the rights of the parties without a referee, but the petitioners were entitled to have their rights determined by the court either with or without the aid of a referee. The court could not properly, in the exercise of its discretion,

deprive the petitioners of this remedy. The remedy given is
equitable in character, and we think the equity side of the
court has jurisdiction. It is, in some respects, analogous to
the foreclosure of mechanics' liens, in which it has been held
to be an action in equity triable by the court without a jury.
(*Kenney* v. *Apgar*, 93 N. Y. 539, 550 : *Goodrich* v. *McDon-
ald*, 112 N. Y. 157.)

In *Goodrich* v. *McDonald* (*supra*), EARL, J., in delivering
the opinion of the court, after quoting from Lord MANSFIELD,
says : " The lien as thus established is not strictly like any
other lien known to the law, because it may exist although
the attorney has not and cannot in any proper sense have pos-
session of the judgment recovered. It is a peculiar lien to be
enforced by peculiar methods. It was a device invented by
the courts for the protection of attorneys against the knavery
of their clients by disabling clients from receiving the fruits
of recoveries without paying for the valuable services by
which the recoveries were obtained. The lien was never
enforced like other liens. If the fund recovered was in pos-
session or under the control of the court it would not allow
the client to obtain it until he had paid his attorney, and in
administering the fund it would see that the attorney was pro-
tected. If the thing recovered was in a judgment, and notice
of the attorney's claim had been given, the court would not
allow the judgment to be paid to the prejudice of the attor-
ney. If paid after such notice in disregard of his rights the
court would, upon motion, set aside a discharge of the judg-
ment and allow the attorney to enforce the judgment by its
process so far as was needful for his protection." (See, also,
*Thompson* v. *Erie R. R. Co.*, 45 N. Y. 468, 473 ; *Sheppard* v.
*Steele*, 43 N. Y. 52; *Matter of Regan*, 167 N. Y. 338.)

We are mindful of the authorities holding, in substance,
that contracts made by foreign executors or administrators for
the benefit of the estate do not bind or create a charge upon
the assets of the estate, but these cases have no application to
the questions under consideration. The trustee now desires to
remove the securities from this state into the state of New

Jersey. The securities are under the custody and control of the courts of this state. He, as trustee, can become liable only for so much of the securities as the courts here determine to deliver over to him. The services of the attorneys claiming the lien were rendered in this state in an action pending in the courts of this state, resulting in a recovery of the property now sought to be charged with the lien. Our courts have jurisdiction thereof, and now have the power to determine what is fair and reasonable compensation and the amount for which the lien should be established. It is claimed that the bill rendered is excessive, but that question can properly be determined by our Supreme Court. We are aware that prejudice exists against references in some parts of the state. Complaints have been made with reference to the time consumed and expenses incurred in determining questions of fact before referees, and not unjustly. Cases have come to our attention in which thousands of dollars have been wasted in time and expenses before referees, but the Supreme Court has the power to correct this abuse and prevent further scandal. The question here involved is very simple; that of the value of the attorneys' services, and this question ought to be determined before the court or a referee at a single session.

The Appellate Division having denied the petitioners' application, it becomes a final order in a special proceeding, and is, therefore, appealable to this court. The appointing of a referee to aid the court in determining the amount of the petitioners' lien was, doubtless, discretionary. The court had the power to determine this without the aid of a referee. The Appellate Division had the power to reverse a discretionary order of the Special Term, and if it had confined its action to such reversal, this court would have had no power to review the order, but the Appellate Division went further and denied the application of the petitioners, thus depriving them of their lien. This part of the order was not discretionary. We think, therefore, that the order of the Appellate Division in so far as it denies the petitioners' application should be reversed and that part of the order which reverses the order

appointing a referee should be modified so as to remit the proceedings to the Special Term to proceed thereon, and that the appellant should recover costs of this appeal.

.PARKER, Ch. J., BARTLETT, VANN, LANDON, CULLEN and WERNER, JJ., concur.

Ordered accordingly.