Bergan, J.
The problem posed by this appeal is the relative rights of two classes of claimants to a balance of $23,000 due from the owner on a contract for the construction of apartment buildings. One class is made up of lienors under article 2 of the Lien Law; the other of trust beneficiaries under article 3-A.
In two lien foreclosure actions previously brought in Jefferson County, an order has been made by the Special Term directing the payment of the balance due on the contract into court under section 55 of the Lien Law. Such a deposit, the statute provides, shall “ take the place of ” the property and “ shall he subject to the lien ”.
The United States and the State of New York have tax claims arising directly from the prosecution of the work. The government’s affirmative pleading as intervenor in this action and as attempted intervenor in the foreclosure actions is to impress a trust for its claim on the funds on deposit. The Appellate Division has enjoined the prosecution of the lienors’ claims, to allow the tax claims to proceed. The two governments are clearly beneficiaries of the trust created by article 3-A of the Lien Law *110 imposed on all proceeds from the work (Lien Law, § 71). But if the fund paid into court in the foreclosure actions is first applied to liens, it will be exhausted and nothing will be left for tax claims; if it is applied both to liens and to trust claimants alike, the statutory priority of the tax claims (Lien Law, § 77, subd. 8) would exhaust the fund and nothing will be left for the lienors. The conflict between lienors and article 3-A trust beneficiaries to the same judicially supervised fund is thus presented to this court for the first time. Since both groups cannot be paid, the choice to be made must rest on a construction of the statute.
The court at Special Term denied the application of the United 'States to enjoin the foreclosure actions. The effect of this would have been to distribute the fund to the lienors; the Appellate Division, by a divided court, reversing, granted the ■injunction, the effect of which seems intended to give the trust beneficiaries an interest in the fund which will, in turn, give priority to tax claims.
The statute on the whole, although it is not without its obscurities, seems to suggest a legislative intent to give lienors first access to a fund paid into court in a lien foreclosure action and to have the trust created by article 3-A attach to a residue after satisfaction of valid liens.
Concededly the United States and the State of New York would have no lien against the property on which the improvement was made, even though the tax claims arose directly from the work being done on the improvement and represented income taxes, social security and unemployment insurance taxes of workers collected and withheld by the building contractor Serafim, from wages.
■Such taxes, however, would constitute a valid basis for claims against trust assets coming into the hands of a contractor within section 71 of the Lien Law; and would have first priority in distribution of trust assets (§ 77, subd. 8).
But the fund which has been paid into court under section 55 of the Lien Law “ take[s] the place of the property upon which the lien existed ’ ’ and this means that lien claims against it are to be looked upon as lien claims against the property itself and, as it has already been noted, tax claims are not lienable under the .statute.
*111 What is a "trust ” under article 3-A is so broadly stated as to include assets of every conceivable type and form arising from the work (§70). It includes “ every asset ” until “ every trust claim ” has been discharged (subd. 3). It includes causes of action as well as realized assets (subd. 2). Certainly money paid by the owner to anyone in satisfaction of the contract would be impressed with this broadly inclusive trust.
But it seems fairly clear that the trust provisions of the Lien Law which were added in 1942 and revised in 1959 (L. 1942, ch. 808; L. 1959, ch. 696) were intended to supplement and not to supersede the much older provisions dealing with the creation and enforcement of traditional mechanic’s liens.
This is made rather explicit in the language of section 79, added as part of the 1959 revision, that "Nothing in this article ” (art. 3-A) shall “ prevent the enforcement of any lien ” as provided in the earlier articles of the statute.
It would seem to follow that, when valid liens are filed against property, the procedural mechanism for their enforcement by substituting the 'balance due on the contract paid into court for the real property does not convert such a fund into a "trust fund” under article 3-A so as to affect adversely the claims of lienors. That the ¡broad language of article 3-A requiring that it may, and will, be treated as a trust fund after the liens adjudicated to be valid are .paid, is quite another matter.
The opinion of the court in Aquilino v. United States of America (10 N Y 2d 271) is consistent with the general evaluation of the statutory purpose, although the case itself turns upon a very different issue. Consistent with the result, too, but not precisely in point, is Hall v. Blumberg (26 A D 2d 64). On this record the lienors should have priority in recourse to the fund deposited in court in their foreclosure actions.
The order of the Appellate Division .should be reversed and that of the .Special Term reinstated, with costs; and the certified question answered in the negative.
Chief Judge Fuld and Judges Bxjrke, Scileppi, Breitel and Jasek concur.
Order reversed, etc.