Louis B. Heller, J.
Plaintiff, Naiztat Iron Works, Inc. (hereinafter Naiztat), a subcontractor, brings this action on behalf of itself and as representative of all other similarly situated unpaid subcontractors against Tri-Neck Construction Oorp. (hereinafter Tri-Neck) and Arnold Neckman under article 3-A of the Lien Law to establish:
1. The existence of a trust fund;
2. That Tri-Neck Construction Corp. and Arnold Neckman are trustees thereof;
3. That Naiztat and other similarly situated parties are beneficiaries of such trust fund; and
4. That both defendants diverted such trust fund.
*229 At the outset, defendants’ affirmative defense of the Statute of Limitations is dismissed. The proof at the trial established that Tri-Neck did not abandon the job nor were they discharged until February 8,1968. This action was instituted on January 31, 1969.
The claims against the defendant Tri-Neck, as general contractor, and Arnold Neckman by virtue of his office as president and sole stockholder of Tri-Neck, are based on the following allegations:
A. That Tri-Neck received from the owners of the property the sum of $43,318 and failed to pay to plaintiff and the other subcontractors and materialmen the sums due to them for the work, labor and services that they performed and the material that they furnished for the job. Plaintiffs claim that Tri-Neck, together with Arnold Neckman, are responsible to plaintiffs for diverting trust funds.
B. That Tri-Neck did not maintain books and records in accordance with the provisions of section 75 of the Lien Law and such failure was “ presumptive evidence that the trustee has applied or consented to the application of trust funds actually received by him as money or an instrument for the payment of money for purposes other than a purpose of the trust as specified in section seventy-one of this chapter.”
Defendants contend as to “A”, that although it (and he) received $43,318 from the owner, Tri-Neck spent and disbursed in connection with the job a sum in excess of $42,536 and consequently, it claims, there was no diversion by the general contractor of trust funds.
As to “ B ”, defendants testified that on May 14, 1969, at the termination of examinations before trial and supplementary proceedings at which defendant Arnold Neckman appeared with Tri-Neck’s books and records, defendants’ automobile with the books and records was stolen and when the automobile was recovered five days later, the books and records contained therein were missing. I may add that I reluctantly resisted an overwhelming impulsion to interpolate the word ‘1 conveniently 5 ’ before the word “ missing ” in the previous sentence.
The payment of $43,318 concededly received by Tri-Neck from the owners of the real property, Jack and Forrest Weisburst, was for work done pursuant to a written construction contract dated June 21, 1967, made between the Weisbursts and TriNeck, and for certain extras authorized by the owners. The concession as to the payment and the amount paid establishes the existence of a trust fund under subdivisions 1, 2 and 6 of section 70 of the Lien Law.
*230 Of the amounts claimed by the defendants to have been disbursed by them in discharge of their obligations as trustees, the administrative expenses of $5,515 and the -drawings and expenses of the defendant Arnold Neckman totaling $7,700 may not be applied under subdivision 2 of section 71 -of the Lien Law in discharge of the trustee’s obligations. The statute provides as follows:
‘ ‘ 2. The trust assets of which a contractor or subcontractor is trustee shall be held and applied for the following expenditures arising out of the improvement of real property or public improvement and incurred in the performance of his contract or subcontract, as the case may be:
“ (a) payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen;
“ (b) payment of the amount of taxes based -on payrolls including such persons and withheld -or required to be withheld and taxes based on the purchase price or value of materials or equipment required to be installed or furnished in connection with the performance of the improvement;
“(g) payment of taxes and unemployment insurance and •other contributions due by reason of the employment out of which such claims arose;
“ (d) payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnish such supplements, to the extent that the trustee, as employer, is obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party;
“(e) payment of premiums on a surety bond or bonds filed and premiums on insurance accrued during the making of the improvement or public improvement. ’ ’
Defendants included in the administrative expenses totaling $5,515 the following amounts:
Rent $303 per month
Accountant (Stanley Neckman, cousin of Arnold Neckman) 150 per month
Telephone 150 per month
Bookkeeper 150 per month
Gar expense, Arnold Neckman 200 per month
Attorneys’ fee for preparation of the contract with the Weisbursts 350
Miscellaneous office expense including subscription to so-called Dodge Reports 400
*231 The amounts applied on a monthly basis were computed for a 22-week period in arriving at the $5,515 total.
These expenses in the amounts stated as well as payments to the principal of the general contractor are not set forth in subdivision 2 of section 71 quoted above as authorized disbursements from the trust fund and consequently are disallowed. To hold otherwise would be to authorize every trustee of a trust fund under the Lien Law to deduct at will his own office overhead expenses thereby providing a ready means to exhaust trust funds. Such a holding would be contrary to the purpose of the Legislature in establishing the trust provisions of the Lien Law. In Greenberg v. Instant Heat & Power Corp. (33 Misc 2d 1081, 1082-1083) Mr. Justice KLein, sitting in Trial Term, New York County, held that: “ A contractor who receives trust moneys is not, by the provisions of sections 70 and 71 (subd. 2, par. [a]) of the Lien Law, included as one of the beneficiaries of the trust assets. The recipient of the trust funds holds them for the benefit of the subclahnants on the improvement, who are enumerated in the statute, and is entitled to any remainder only after the payment of their claims (Aquilino v. United States of America, 10 N Y 2d 271; American Blower Corp. v. James Talcott, Inc., 10 N Y 2d 282). The trust arises as soon as the trustee receives the fund and continues until all claims for services and material on the improvement, by the classes designated in the statute, have been paid. The contractor or subcontractor, as the ease may be, is a resulting beneficiary, who is entitled to any remainder of the fund after it has been distributed to claimants entitled to share in it (Davis & Warshow, Inc. v. S. Iser, Inc., 30 Misc 2d 528, 539).
16 The defendants obviously may not frustrate plaintiff’s recovery by the assertion of prior rights or reduce it by purporting to share in the beneficiary rights accorded to the plaintiff by the statute.”
In so holding the court disallowed the defendant general contractor’s claim in that case to an allowance to it out of the trust assets “ on a quantum meruit basis for work done on the job.” To have allowed the claim would have wiped out the plaintiff subcontractor’s rights as a beneficiary of the trust fund. To allow the defendant, Arnold Neckman, in this case, to receive and retain $7,700 on account of personal drawings and $5,515 for his office expenses will have the same result and wipe out the claims of the plaintiff and of all other subcontractors who remain wholly unpaid.
Granting defendants’ claimed disbursements wherever anywhere within the outer ambit of believability, including payments *232 to an elusive watchman and ephemeral field laborers, and a purported payment of $400 to Naiztat, I hold that plaintiffs are entitled to judgment against the defendants Tri-Neck and Arnold Neckman, who are adjudged trustees of the moneys paid by the owners for the improvement of their real property and diverted by defendants, and that defendants hold the trust fund for the benefit of the plaintiff and those similarly situated subcontractors and materialmen. By virtue of the proof and the provisions of subdivision 2 of section 70 and subdivision 1 of section 79-a of the Lien Law, Tri-Neck and Arnold Neckman are trustees of the fund in the sum of $15,553, computed as follows:
Naiztat Iron Works, Inc......................$ 5,500
J. B. Eurell Co., Inc.......................... 2,550
Pile Foundation Construction Co., Inc......... 4,103
Max Chait ................................. 1,500
Alltest Foundation Corp...................... 1,500
Barias and Schwartz........................ 400
for a total of........................$15,553
From this sum, $2,000 is deducted representing $2,000' paid directly to Naiztat, Eurell, and Alltest by the owners Weisburst for the discharge of their respective mechanic’s liens, of which sum Naiztat received $1,050, Eurell received $750, and Alltest received $200.