The **INGALLS IRON WORKS COMPANY**, a corporation, Plaintiff,

v.

**FEHLHABER CORPORATION**, a corporation, et al., Defendants.

No. 68 Civ. 1445.

United States District Court, S. D. New York.

Jan. 13, 1972.

Jarvis, Pilz, Buckley & Treacy (formerly Jarvis & Pilz) pro se by Emil V. Pilz, Eugene Schaffel and George F. Mackey, New York City, of counsel.

McChesney & Kenney, Troy, N. Y., for plaintiff by William K. Murray, C. V. Stelzenmuller, Birmingham, Ala., of counsel.

Norton, Sacks, Molineaux & Pastore, New York City, for defendants by Charles B. Molineaux, Jr., New York City, of counsel.

## OPINION

POLLACK, District Judge.

This motion seeks recovery of attorneys' fees from the proceeds of a New York State Court of Claims judgment in favor of the Fehlhaber-Terry joint venture (Fehlhaber), the general contractor for a section of the Gowanus Expressway construction project. Fehlhaber sued the State for the value of additional work ordered for the project and certain expenses. This Court has previously ruled that Fehlhaber holds all funds received in connection with this project as the trustee of the statutory trust thereof

created by N.Y. Lien Law Art. 3–A (McKinney 1966). Ingalls Iron Works Company v. Fehlhaber Corporation, 327 F.Supp. 272 (S.D.N.Y.1971).

The law firm of Jarvis & Pilz represented Fehlhaber in the Court of Claims litigation; its fee was set by agreement at 20% of any award, plus disbursements. The Court of Claims awarded Fehlhaber $574,428 for the additional work and expenses,[1] Fehlhaber Corp. v. State of N. Y., 63 Misc.2d 298, 312 N.Y. S.2d 123 (Ct.Cl.1970), modified, 64 Misc. 2d 167, 314 N.Y.S.2d 574 (Ct.Cl.1970) (correcting erroneous award of interest), and although the State appealed the major part of the determination, it chose not to appeal a portion of the judgment on which the award totalled $101,821. Warrants for this amount were transmitted to Fehlhaber's attorneys, who, in October, 1971, transferred them to Fehlhaber. It is on the amount derived from these warrants that the attorneys claim a lien, N.Y.Judiciary Law § 475 (McKinney 1968), which they ask this Court to allow in an amount of approximately $21,212.[2]

An order of this Court, dated October 13, 1970, restrained diversion or distribution of any of the trust assets including the proceeds of the claim against the State; any monies derived therefrom were to be held by Fehlhaber subject to this Court's exclusive control. The order included a provision that "Payment may be made on account of the Attorneys Lien of Jarvis & Pilz for fees and disbursements, upon notice to the parties hereto and on Order of the Court therefor."[3]

---

1. This was the base amount of the award. The Court of Claims also awarded interest, to run from March 28, 1965, 63 Misc.2d at 315, 312 N.Y.S.2d 123. Movant's affidavit states that the total recovery was approximately $702,000. In addition, Fehlhaber had previously received $55,000 cash and $314,000 in bonds from the State on a severed cause of action.

2. This amount is composed of $20,364 in fees and $848 of disbursements.

3. The initial draft of the October 13 order, submitted by the New York attorneys

for Ingalls Iron Works Co., stated that the lien of Jarvis & Pilz would be recognized "in the amount of 20% plus disbursement [sic] of the amount recovered for the trial of the action." This Court altered the language of the order to its present form. Although the original order was the product of conversations between Jarvis & Pilz and the Ingalls' New York attorneys, the claim is now made incorrectly, by Ingalls' Alabama attorneys, who have appeared during the litigation in this Court, that the order was meant merely to allow the lien if Jar-

Ingalls Iron Works Co., as a representative of the class of potential beneficiaries, successfully sought enforcement against the general contractors of the Lien Law statutory trust, Lien Law § 77 (1); it now contends that the moving parties are not entitled to assert an attorney's lien and to be paid out of the proceeds of the Court of Claims recovery. Ingalls argues that the requirements in Lien Law § 71(2) (a–e) that trust beneficiaries' claims must be satisfied before trust assets are used for any other purpose necessitates subordination of the attorney's lien,[4] that the trust beneficiaries' claims are senior because they were prior in time to any lien the attorneys can claim, and that the attorneys waived any lien they might otherwise have had by delivering the warrants to Fehlhaber. Finally, Ingalls requests that, in the event the lien is allowed, an alleged right of the trust beneficiaries to surcharge Fehlhaber for a diversion of trust assets be preserved.

■ The question at issue is whether payment of compensation for services and expenses to the attorneys of a general contractor out of the proceeds of a judgment which the attorneys have recovered for work done by the general contractor on a state contract is inconsistent with the contractor's statutory duty as Lien Law trustee to preserve and account for the trust fund. New York law controls resolution of this question. In re McCrory Stores Corp., 19 F.Supp. 691, 693 (S.D.N.Y.1937).

There is no dispute that the moving attorneys were employed by Fehlhaber and that they rendered the services which led to realization of the trust asset represented by Fehlhaber's right of action against the State. Lien Law § 70 (1). The amount to be paid to Fehlhaber may reach as much as $710,000, after conclusion of the appeal proceedings mentioned above, *supra* n. 1. Meanwhile, as stated, $101,821. has been collected enhancing the fund (subject to proper expenses of collection) out of which the trust beneficiaries may seek satisfaction of their claims. The suit against the State was undeniably necessary and clearly for the benefit of the class protected by the Lien Law and in reality in the nature of a class claim.

■ The language of the Lien Law, previous decisions interpreting that statute, equitable principles, and the realities of the statutory scheme all make it clear that the attorney's lien is entitled to satisfaction out of the monies received on the award of the Court of Claims and made available to the trust.[5]

---

vis & Pilz proved entitled to such a lien. Any prior agreement recognizing the right to a lien is denied.

4. Lien Law § 71(2) states that assets of the contractor's trust are to be held and applied in satisfaction of five classes of claims: monies due for services and wages; payroll taxes; other taxes and unemployment insurance contributions; wage benefits and supplements; and surety bond or insurance premiums. Section 72(1) states that a diversion of trust assets occurs if "any trust asset is paid . . . or applied for any purpose other than a purpose of the trust as stated in [§ 71(2)] . . . before payment or discharge of all trust claims with respect to the trust . . . whether or not there are trust claims in existence at the time of the transaction. . . ." It continues "[If] the diversion occurs by the voluntary act of the trustee or by his

consent such act or consent is a breach of trust."

5. The only New York decision found which deals directly with the issue raised here is Travis v. Nansen, 176 Misc. 44, 26 N.Y.S.2d 590 (Sup.Ct.Broome County 1941) where the Court held that the lien of the contractor's attorney on a judgment against the property owner was superior to the competing mechanic's lien of a subcontractor. The Court commented that "nothing . . . in Section 36–a [the forerunner of Article 3–A of the Lien Law] prohibiting the contractor from diverting funds received by him . . . would deprive an attorney of his statutory lien." 176 Misc. at 46, 26 N.Y.S. 2d at 592. In the light of the expansion of the statutory trust concept by legislation in 1942 and 1959, Travis v. Nansen can no longer be regarded as directly controlling, and there are indications that

The statutory trust provisions do not *per se* override the lien of an attorney on a recovery which his services have effected. The Court of Appeals has indicated *in dicta* that attorney's fees may be allowed out of the fund created by the suit of the general contractor as representative of the class of trust beneficiaries, Caristo Construction Corp. v. Diners Financial Corp., 21 N.Y.2d 507, 515, 289 N.Y.S.2d 175, 236 N.E.2d 461 (1968) (Breitel, J.) (no fees allowed since general contractor had paid all claims and thus the action could not be classified as representative); Walker Process Equipment, Inc. v. A. C. Kaestner, Inc., (Sup.Ct.Westch.County) 164 N.Y.L.J. No. 68 at 20 (issue of Oct. 6, 1970) held on the basis of *Caristo* that "attorneys fees are a proper charge against the fund" created by a suit brought by one of the trust beneficiaries to enforce the trust.[6]

The fact that Fehlhaber's action was not in technical terms asserted to be brought in its capacity as statutory trustee does not affect its fundamental character nor the propriety of allowing attorney's fees to be charged against the recovery.

The purpose of the statutory trust mechanism is to safeguard the rights of persons participating in a construction project by requiring that a contractor or subcontractor act "as fiduciary manager of the fixed amounts provided for [construction] operations."

*See* 1959 Report of N.Y.Law Rev.Comm. at 214, quoted in Frontier Excavating, Inc. v. Sovereign Construction Co., 30 A.D.2d 487, 489, 294 N.Y.S.2d 994, 997 (4th Dept. 1968), *appeal denied*, 24 N.Y. 2d 991, 302 N.Y.S.2d 820, 250 N.E.2d 228 (1969). Aquilino v. United States, *supra*, n. 5, emphasizes that in its essentials a contractor's trust resembles any other trust relationship. 10 N.Y.2d at 278, 280–281, 219 N.Y.S.2d 254, 176 N.E.2d 826.

Nor does *Aquilino* directly foreclose recognition of the attorney's lien, as Ingalls argues. The Court of Appeals there held that the funds received by a general contractor did not constitute "property" or "rights to property", Int.Rev. Code of 1954 § 6321, to which a prior federal tax lien could attach,[7] since such funds were held by the contractor as trustee until all claims were satisfied. In the course of its opinion the Court stated that "There is no good reason to suppose that the Legislature, by declaring payments to a contractor to be 'trust funds', did not intend thereby to avoid *the very same possibilities of harm* to the statutory beneficiaries as was intended by the rule against diversion of the funds of an express trust." *Id.* at 279, 219 N.Y.S.2d at 260, 176 N.E.2d at 831 (emphasis added).

New York recognizes the right of a trustee's attorney to recover for services for a trustee creating a fund for trust beneficiaries [8] and the right of

---

the New York Courts would no longer follow it without re-examination of its result in the light of the expansion and codification of the statutory trust mechanism. See Aquilino v. United States, 10 N.Y. 2d 271, 275–276, 219 N.Y.S.2d 254, 176 N.E.2d 826 (1961) (Fuld, C. J.)

6. *Cf.* Lexow v. Tremaine, 252 App.Div. 307, 308, 299 N.Y.S. 412 (3d Dept. 1937), *aff'd mem.*, 277 N.Y. 657, 14 N.E. 2d 207 (1938) (attorneys' lien held prior to claim of surety company as assignee of contractor's claim against State of New York.)

7. The lien arose from taxes previously owed by the contractor. Insofar as taxes arising from the conduct of the construction project are concerned, the federal and

state tax collectors are among the trust beneficiaries. Lien Law §§ 71(2) (b) and (2) (c).

8. The procedure of the Surrogate's Court for setting compensation for attorneys during administration of an estate, N.Y. SCPA, McKinney's Consol.Laws, c. 59–a, § 2110, is based on the charging lien embodied in § 475 of the Judiciary Law, Matter of Haas' Estate, 33 App.Div.2d 1, 304 N.Y.S.2d 930 (4th Dept.1969), leave to appeal denied, 26 N.Y.2d 842, 309 N.Y.S.2d 590, 258 N.E.2d 88 (1970). The Court of Appeals for the Second Circuit has held that § 475 creates a lien for the attorney on the trustee's cause of action. Lazenby v. Codman, 116 F.2d 607, 609 (2d Cir. 1940).

the trustee himself to charge the fund for the amount of legal expenses incurred in the trust's interest. Woodruff v. New York, L. E. & W. Ry., 129 N.Y. 27, 29 N.E. 251 (1891),[9] III A. Scott, Trusts § 188.4. Neither expenditure is regarded as a diversion or as wrongfully harmful to the interest of the beneficiaries.[10]

The fund received from the Court of Claims must be devoted to payment of trust claimants until all claims are satisfied; this fact alone denudes plaintiffs' charge of unfairness of much of its force.[11] Moreover, there is no chance of the contractor being unjustly enriched by allowing the fund recovered to be surcharged for attorney's fees. Fehlhaber's conduct did not create the expense of collection of additional monies from the State.

■ More importantly, Fehlhaber has no right to any funds except in its status as residual beneficiary. To the extent that there is a surplus after all the outstanding trust claims have been satisfied, the attorney's fees reduce the surplus the contractor would otherwise obtain.[12] To the extent that the fund is insufficient to satisfy trust claims, either before or after subtraction of attorney's fees, all that has occurred is that the beneficiaries have borne the cost of creation of a fund for their benefit; it would be unduly harsh and grossly unfair to interpret the statute to require the contractor, as trustee, to bear the cost of recovering a judgment from the Court of Claims under such circumstances.[13]

Baldwin Kitchen Cabinet Corp. v. Artz, 27 Misc.2d 265, 209 N.Y.S.2d 39 (Sup.Ct.Nassau County 1960), *modified on other grounds*, 15 A.D.2d 560, 222 N.Y. S.2d 950 (2d Dept. 1961), and Naiztat Iron Works v. Tri-Neck Construction Corp., 62 Misc.2d 228, 308 N.Y.S.2d 427 (Sup.Ct.Kings County 1970), cited by Ingalls, are distinguishable. In the former case, a prior mechanic's lien against the property owner had been filed and prevailed over the attorney's lien, and the mention of the statutory trust provisions was properly *dictum*.[14] *See* 27 Misc.2d

9. "If there was any other remedy in the power of the trustee to pursue and protect the interest of those who were the beneficiaries of the fund in his charge, it was his duty to use it. . . . Does it lie in the mouths of these bondholders, who accept the benefit of his action, to say that he was not acting in that respect as their trustee, because he was personally liable for the payment of such rentals [in the event the monies had not been recovered from the defendant railroad]?" 129 N.Y. at 35, 35–36, 29 N.E. at 253.

10. New York has recognized an equitable assignment of the trustee's right to the attorney *himself*, if the latter's formal lien is void for some reason. Schoenherr v. Van Meter, 215 N.Y. 548, 109 N.E. 625 (1915) (Cardozo, J.), Lazenby v. Codman, *supra*, n. 8 (alternate holding).

11. *See* Matter of Herlihy, 274 App.Div. 342, 347, 83 N.Y.S.2d 707, 711 (3d Dept. 1948) ("[The] governmental lienors stood by knowing that litigation was necessary if the choses in action were to produce proceeds upon which the tax liens could attach. They acquiesced in the bringing and prosecution of the actions by the insured all the while knowing that petitioner's services were a necessary ex-

pense, and charged with notice of his lien therefor upon his client's causes of action, and their resultant proceeds.").

12. To this extent, at least, the requirements of Lien Law § 72(2) that "trust assets shall not be levied upon as the individual property of the trustee" would seem self-enforcing.

13. This is not a case where the contractor is attempting to "frustrate plaintiff's recovery by the assertion of prior rights or reduce it by purporting to share in the beneficiary rights accorded to the plaintiff by the statute." Louis Greenberg, Inc. v. Instant Heat & Power Corp., 33 Misc.2d 1081, 1083, 227 N.Y.S. 2d 76 (Sup.Ct.New York County 1962). Although Travis v. Nansen, *supra* n. 5, may be obsolete, its observation that "by his attorney's lien . . . came into being, not by any voluntary act on the part of [the contractor] but by virtue of the statute", 176 Misc. at 46, 26 N.Y.S. 2d at 592, goes to the crux of the dispute between Ingalls and the attorneys here.

14. "Lien Law, section 36–a (now Section 70) applicable to private improvements, declares that funds received by a contractor . . . are trust funds to be

at 266, 209 N.Y.S.2d at 41 ("The lien of the subcontractor, however, had been filed one month earlier [than the attorney's lien arose] and takes precedence."). In the latter case, a contractor attempted to deduct the cost of administering the construction project itself from the amount shown by an accounting to be due to subcontractors. To extend the reach of these decisions to bar recovery of attorney's fees,—the cost of producing a fund delivered to the trust—out of monies which otherwise would not have been available to the trust at all, would run counter to the objectives of the Lien Law and the tenets of trust law generally.

■■ Nor can Ingalls assert a temporal priority entitling it to the status of senior lienor. An attorney's lien attaches when the cause of action to which it relates is commenced, Judiciary Law § 475. In re City of New York (United States v. Coblentz), 5 N.Y.2d 300, 306–307, 184 N.Y.S.2d 585, 157 N.E.2d 587 (1959), cert. denied, 363 U.S. 841, 80 S.Ct. 1606, 4 L.Ed.2d 1726 (1960). The lien prevails over the claims of creditors of the attorney's client, Matter of Peters, 271 App.Div. 518, 521, 67 N.Y.S.2d 305 (3d Dept. 1946), modified on other grounds, 296 N.Y. 974, 73 N.E.2d 560 (1947), but does not supersede "a prior charge against the specific fund upon which the attorneys' lien has attached." Bacon v. Schlesinger, 171 App.Div. 503, 504, 157 N.Y.S. 649, 650 (1st Dept. 1916), aff'd mem., 224 N.Y. 690, 121 N.E. 854 (1918); see also In re Carver Houses, 114 N.Y.S.2d 707, 709 (Sup.Ct. N.Y. County 1952); Baldwin Kitchen Cabinet Corp. v. Artz, supra, (prior mechanic's lien), In re Brooklyn Bridge

Southwest Urban Renewal Project, 31 A. D.2d 895, 296 N.Y.S.2d 279 (1st Dept. 1969) (lien of City of New York, unpaid rent).

■ The New York Courts have denied Ingalls' claim to a mechanic's lien on the ground that the lien filing was untimely, Ingalls Iron Works Co. v. Fehlhaber, Inc., 29 App.Div.2d 29, 285 N.Y.S. 2d 369 (3d Dept. 1967), aff'd mem., 24 N.Y.2d 862, 301 N.Y.S.2d 95, 248 N.E.2d 923 (1969). Ingalls' only status is as a trust beneficiary, and its assertion of temporal priority rests on the provision of § 71(5) of the Lien Law that "For the purposes of this article, every trust claim shall be deemed to be in existence from the time of the making of the contract . . . out of which the claim arises and . . . the rights of each member of the class of beneficiaries accrue [at the same time]." [15]

■ Under New York law, a trust beneficiary does not acquire the additional status of a mechanic's lienor; instead "[h]e becomes a beneficiary of a trust when one comes into being by virtue of a status created by law." Harman v. Fairview Associates, 25 N.Y.2d 101, 105, 302 N.Y.S.2d 791, 794, 250 N.E.2d 209, 210 (1969). His claim is junior to that of one holding a mechanic's lien resulting from the same construction project, Onondaga Commercial Dry Wall Corp. v. 150 Clinton St., 25 N.Y.2d 106, 302 N.Y. S.2d 795, 250 N.E.2d 211 (1969); Hall v. Blumberg, 26 A.D.2d 64, 270 N.Y.S.2d 539 (3d Dept. 1966). In Onondaga, the Court of Appeals commented that "it seems fairly clear that the trust provisions of the Lien Law . . . were intended to supplement and not to supersede the much older provisions dealing

applied first to the payment of sub-contractors. . . . [T]he trust funds include the right of action upon an obligation for moneys due. . . . When the action in behalf of the contractor was begun, its attorney did so with knowledge of the sub-contractor's prior filed lien." 27 Misc.2d at 267, 209 N.Y.S.2d 41.

15. The Report of the Law Revision Commission which accompanied introduction

of the legislation which added § 71 (5) to the Lien Law indicates that the provision's purpose is to allow a potential beneficiary whose claim has not matured equal right to "initiate an action to enforce the trust and have his interest considered in any determination. . . ." "Act, Recommendation and Study relating to the Trust Fund Provisions of the Lien Law", 1959 Report of N.Y. Law Revision Comm. 185, at 220.

with the creation and enforcement of traditional mechanic's liens." 25 N.Y.2d at 111, 302 N.Y.S.2d at 798, 250 N.E.2d at 213.[16]

■ Although the holdings in *Onondaga* and *Hall* rested primarily upon § 79 of the Lien Law ("Nothing in this article shall prevent the enforcement of any lien as provided in articles two and three of this chapter and neither such lien nor any satisfaction obtained thereby, shall be deemed a diversion of trust assets or an unauthorized preference."), it is hard to adopt their view of the relationship of liens and trust claims to that urged by Ingalls. While an attorney's lien is not set forth in terms in either Article 2 or Article 3 of the Lien Law, it is of equal dignity with such liens. It is difficult for this Court to believe that the New York Courts would treat mechanic's liens and attorney's liens differently when a competing trust beneficiary is involved than when the liens were merely competing against one another for priority. It is worthy of note that in *Onondaga* the lienor was held to prevail although he would otherwise have been a trust beneficiary and his claim exhausted the monies otherwise available to the trust. Here, as discussed earlier, the attorneys' efforts have enlarged the fund. In effect, the claim of temporal priority is merely a restatement of Ingalls' view that payment of the attorneys is unfair or not in accord with the provisions of Article 3–A, a view rejected above.

For the reasons discussed, the Court cannot accept the contention that payment of the attorneys for their services is a diversion of trust assets, and there is no reason to postpone the issue of possible surcharge of Fehlhaber to an accounting proceeding that promises to be sufficiently complex and vigorously contested in its own right. No surcharge of Fehlhaber is justified by these facts; *Caristo* and *Woodruff* indicate, on the contrary, that if Fehlhaber were to pay the fees itself, it might claim a right to surcharge the fund to the extent that the monies recovered were paid to trust beneficiaries.

■ Ingalls' last argument is that a waiver of the attorney's lien has occurred. The purpose of the rule that an attorney's charging lien is waived if the attorney delivered the proceeds of the judgment to his client without exercising his lien is to avoid any misleading of third parties as to the status of the proceeds. Goodrich v. McDonald, 112 N.Y. 157, 19 N.E. 649 (1889). Here, all parties had notice of the claimed lien and the money was paid over to Fehlhaber in compliance with the Court's order of October 13, 1970. There has been no prejudice to third parties here. Matter of King, 168 N.Y. 53, 57–58, 60 N.E. 1054 (1901). Ingalls' arguments to the contrary are not consonant with requirements of good faith in the light of the facts of the previous proceedings and the negotiations which accompanied them, n. 3, *supra*.[17]

■ No one has seriously challenged the propriety of the twenty per cent figure claimed pursuant to the lien. The proof of the scope and extent of the

---

16. These decisions would seem to rob the dictum in Baldwin Kitchen Corporation v. Artz, *supra*, which equated the status of mechanic's lienor and trust beneficiary, of any persuasive force it might otherwise have.

17. *Cf.* Todd v. Mutual Factors, Inc., 3 A.D. 2d 537, 546, 161 N.Y.S.2d 738, 746, *aff'd mem.*, 4 N.Y.2d 759, 172 N.Y.S.2d 169, 149 N.E.2d 94 (1958), (1st Dept.1957) (attorney waived portion of his lien by "long failing to assert his rights"; as to the remainder of the lien, which was enforced, the Court commented "Circumstances could, of course, combine to make it oppressive or unjust to enforce such a statutory lien; but this is not such a case. Defendant not only received direct and substantial benefits from plaintiff's professional work . . . ; but it was so closely related to the whole process and followed up its interests in such detail that it is not easy to accept its argument that it did not know the underlying processes by which payments from the Navy were effected." *Id.* at 542, 161 N.Y.S.2d at 743.).

services amply sustains the amount claimed. The sum is reasonable and is well within the range of what a New York Court would allow. *See* Walker Process Equipment, Inc. v. A. C. Kaestner, Inc., *supra*, (materialman's attorney allowed fee of 25%).

Settle order on notice in conformity with F.R.Civ.P. 54(a).

So ordered.