## In re PLIMOUTH MANAGEMENT, INC., Debtor.

### Herbert C. KAHN, Trustee, Plaintiff,

v.

### Michael BETTE, Defendant.

Bankruptcy No. 85–01023–HAL.
Adv. No. 86–1158.

United States Bankruptcy Court, D. Massachusetts.

Dec. 30, 1986.

Richard G. McKenzie, Kahn & McKenzie, Boston, Mass., for plaintiff/trustee.

Paul R. Salvage, Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C., Springfield, Mass., for defendant; Daniel J. Smitas, Albany, N.Y., on brief.

## MEMORANDUM ON PREFERENTIAL PAYMENT

HAROLD LAVIEN, Chief Judge.

Under consideration is an adversarial proceeding brought by the trustee in bankruptcy in an effort to recoup an alleged preferential transfer to the defendant under 11 U.S.C. § 547(b).[1] The debtor declared bankruptcy on September 13, 1985. The defendant admits that the transfer in question took place within 90 days of the debtor's filing of its bankruptcy petition. In its defense, the defendant contends that the transfer is properly characterized as an assignment and, therefore, was a contemporaneous exchange pursuant to 11 U.S.C. § 547(c)(1)(A) & (B) and/or (2), was a trust with the defendant as beneficiary under the trust provisions of the New York State Lien law.

Pursuant to 11 U.S.C. § 547(g), the burden of proof as to the question of whether a preference has been received by the defendant under 11 U.S.C. § 547(b) rests with the trustee and the defendant bears the burden of proof as to the nonavoidability of the transfer under 11 U.S.C. § 547(c)(1)(A) & (B). The parties have stipulated that the transfer was made within 90 days of the debtor declaring bankruptcy, that the debtor was insolvent at the time it was made, and that no perfection of the transaction instrument occurred. With these issues no longer in dispute, the remaining matters to be addressed by the trustee are whether payment by the debtor to the defendant was in satisfaction of an antecedent debt. The defendant responds to this claim of the trustee by contending that the exchange was a contemporaneous assignment under 11 U.S.C. § 547(c)(1)(A) & (B). In light of the postures of the litigants, the burden of proof rests with the defendant to prove the nonavoidability of the transfer.

The matter before the Court involves the following set of facts. The defendant is a

---

1. § 547. Preferences

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

principal of a construction company, Barry, Bette & Led Duke (hereinafter referred to as "BBL"). In the Spring of 1985, BBL was a general contractor on a project under contract with the State of New York. The debtor was a subcontractor, hired by BBL to work on this project. BBL had been advancing the debtor monies in order for it to meet its obligations. However, on or about May 28, 1985, BBL was served with a Restraining Order by a creditor of the debtor which prevented it from further distributing funds to the debtor, and, as a result, BBL decided it could not make further advances to the debtor. Thereafter, the defendant, personally and out of his personal funds, provided the debtor with monies in the amount of $32,908.81 on or about May 28, 1985. At this same time, the parties executed a document[2] which states in pertinent part that the monies are "hereby assigned to Michael Bette"; however, it also states "in consideration of a loan for this amount". The Restraining Order was resolved by payment, approximately a week after it was issued. The monies were repaid to the defendant three-and-a-half months later, on September 10th, in the following manner. The debtor's principal was instructed by the defendant to bring a company check which he was to present to an agent of the defendant in exchange for a check in the same amount from BBL to the debtor. In keeping with this plan, the defendant's agent was instructed not to give the debtor's principal the BBL check unless he had received a check from the debtor, made out to the defendant in the correct amount. The check was delivered to the defendant on September 10th and the debtor declared

bankruptcy on the 13th. The defendant testified that the debtor had submitted requisitions for monies owed by BBL which were unpaid as of May 28th. The debtor received payments in between the time when the injunction was lifted and when the defendant received the lump sum payment of $32,908.81. At the time the exchange of checks occurred between the debtor and the defendant's agent, the debtor received other payments from BBL. No interest was charged the debtor for the use of the monies. The defendant claims that the transaction slipped his mind and that was why he allowed over three months to elapse before requiring repayment. He also asserts that the reason for an exchange of checks, rather than a payment of the monies directly from BBL to the defendant, was as an attempt to avoid any questionable transaction on the books of BBL, since the defendant is one of its principals, and this was his personal, not a company, transaction. The defendant further testified that he was without knowledge of the pending bankruptcy at the time of the check exchange. He first heard of the bankruptcy either one or two days later, at which time he still was holding the check. On hearing that bankruptcy was imminent, he immediately deposited the check.

The crux of this dispute lies in whether the transaction between the parties is best characterized as an assignment or a secured loan. If the transaction is characterized as a secured loan, the trustee may avoid payment to the defendant because the defendant failed to perfect the security agreement within 10 days as required un-

2.

PMI
CONSTRUCTION     Telephone
SPECIALISTS     (617) 746–6219

PLIMOUTH MANAGEMENT, INC.
21 Sheridan Drive • Plymouth, Massachusetts 02360

May 28, 1985
I, Donald E. Davidson hereby assign to Michael Bette the sum of $32,908.81, due and owing on the N.Y. State Armory & Headquarters Project from the firm of Barry, Bette, and Led Duke in consideration of a loan for the amount on Project # 32930–C.

This acknowledges receipt of $32,908.81 and authorizes Barry, Bette, and Led Duke to withhold same from any proceeds due.

Signed:

Donald E. Davidson
Exec. Vice President

(corporate seal affixed)
Witness:

Janice C. Davidson
President

der 11 U.S.C. § 547(E)(2)(A), in order to be deemed secured on the date of the underlying transaction. Otherwise, the transfer is considered to occur on the date of payment, three days before the bankruptcy filing. Defendant argues that no perfection was required because the transaction was a contemporaneous assignment which would make the effective date May 28, well before the 90 days and, of course, the payment would not be for an antecedent debt.

■■■ The parties and the Court agree that in determining the characterization of the transaction, the intent of the parties should be given greater weight than the equivocal language of the instrument. The Court in *Matter of Candy Lane Corp.*, 38 B.R. 571, 575 (Bankr.S.D.N.Y.1984), stated:

To decipher a security agreement from an absolute assignment is often a difficult task. As one district court describes this gray area, "it is difficult to find an easy rule for determining when a transaction is one involving an assignment or contract for security purposes and when there is an absolute assignment." *In re Boughner*, 8 U.C.C.Rep.Serv. (Callaghan) 144, 149 (W.D.Mich.1970). This court in the past has noted that no particular phraseology is required to effect an assignment. All that is required is that the property must be sufficiently identifiable and there must be an intent to assign a present right in the subject matter of assignment, divesting the assignor of all control over that which is assigned. *In re Moskowitz*, 14 B.Rk. 677, 681 (Bkrtcy. S.D.N.Y.1981) (citations omitted).

A document which is seemingly an absolute assignment on its face may nevertheless be treated as a security agreement in certain instances. Section 1–201(37) of the Uniform Commercial Code defines a security interest as "an interest in personal property or fixtures which secures payment or performance of an obligation." N.Y.U.C.C. § 10201(37) (McKinney Supp. 1983–1984). Professor Gilmore has written that the definition of "security interest" offered by the U.C.C. "is essentially a declaration of faith." 1

G. Gilmore, Security Interests in Personal Property § 11.1, at 334 (1965). The broad language used by the drafters recognizes "that the courts will determine the true nature of a security transaction, and will not be prevented from exercising their function of judicial review by the form of words the parties may have chosen." *Id.* § 2.6, at 47.

The transaction involved in this matter includes both the word "loan" and "assign", each cancelling out the effect either would have on character of the instrument. In the matter before the Court, the facts do not weigh heavily in either direction. The evidence in support of this transaction as an assignment is the document, itself; the fact that no interest was charged, and that the defendant, by virtue of his office had practical, if not legal, control of the procedure for repayment. On the other hand, the evidence in favor of the intent being a secured loan is the entire set of circumstances surrounding repayment starting with the three-and-a-half month period before payment was requested by the defendant, especially in light of the fact that the injunction was lifted within a week, and payments were made to the debtor by BBL prior to the time of the check transfer with no claim being made under the alleged assignment. Then, there is the previous practice that had developed on this contract of BBL's loans in the form of advances for which this transaction was a substitution forced by the injunction. The actual structure of the repayment; namely, BBL paying to the debtor the funds owed and the debtor issuing its own corporate check to the defendant. The testimony of the two principals is as equivocal as the document, but it was clear that the debtor would be expected to repay this advance even if no new funds were generated from the job. Ultimately, payment was made through an exchange of checks and the defendant received the monies drawn from the debtor's account. The defendant claims he styled the payment in this manner in order to avoid any question of propriety. But, what propriety, if the May 28 document was

really intended as a fait accompli assignment?

The defendant has not presented and the Court is unable to find any facts or precedent distinguishing this case from any other in which a corporate officer personally loans money to an employee and, to a certain extent, controls the distribution of salary to its indebted employee. If the defendant had not required payment on September 10th, but delayed three days until after the debtor filed its bankruptcy, the same set of facts would support a claim for an unpaid debt.

As previously indicated, the burden of proof on the assignment meeting the exception to a voidable preference as a contemporaneous assignment under 11 U.S.C. § 547(c)(1)(A) & (B) rests upon the defendant under 11 U.S.C. § 547(g). That burden not having been sustained, I find that the parties intended a loan to be secured by future payments under the construction contract. The security interest was not perfected by recording as required by the U.C.C. The payment of $32,908.81 on September 10th, three days before filing, was a voidable preferential payment of debtor funds for an antecedent debt for the debtor's benefit while insolvent that would enable the defendant to realize more than he would have received under the appropriate priorities in a Chapter 7, if the transfer had not been made.

■ The second of defendant's arguments pertains to the New York State Lien Law, Article 3–A §§ 70–79, according to which the defendant claims the funds in question were part of a trust outside of the estate and, therefore, beyond the reach of the trustee. In this regard, the defendant cites the following New York State statutory authority in order to prove a trust. Section 70, at paragraph 6, states:

6. The assets of the trust of which a *contractor* is trustee are the funds received by him and his rights of action for payment thereof

(a) under the contract for the improvement of real property or the public improvement;

(b) under an *assignment* of funds due or earned or to become due or earned under the contract . . . . . (emphasis added)

Section 71, subdivision 3, defines what is a valid "trust claim" under Article 3–A, as follows:

With respect to the trust of which an owner is TRUSTEE, "Trust claims" means claims of contractors, architects, engineers, surveyors, laborers and materialmen. Arising out of the improvement, for which the owner is obligated, and also means any obligation of the owner incurred in expenditure defined as cost of improvement.

As the trustee so contends, the defendant's argument misses the mark, for he does not fit under any of the listed categories of intended beneficiaries of the statute. The defendant was not a contractor, and did not hold any of the funds paid to the debtor and, of course, the Court has already found that there was no perfected assignment. As the statute reads, its intent is to protect those individuals who had contributed to the improvement of the construction project. The defendant, himself, states in his *Reply Brief:*

As we have shown, the Trustee in Bankruptcy can only take this money and use it for payment of trust claims of claimants who provided labor and materials and contributed to the construction of the public improvement project in question.

The defendant, as an individual, did not provide labor or materials but rather, simply lent money to the debtor; in this regard, he did not, himself, contribute to the project. The numerous cases cited in the defendant's two briefs are all inapposite, with one exception, in that all of the other cases deal with someone who is clearly in the protected class of a contractor, subcontractor, or supplier. As a matter of fact, the only case he cites in support of his status as a beneficiary, *Ingalls Iron Works Co., v. Fehlhaber Corp.*, 337 F.Supp. 1085 (S.D.N.Y.1972) involves an attorney receiving compensation from the trust fund which was recovered as a result of his professional efforts. The court, in part,

supports its decision to allow the attorney to draw its compensation from the trust fund by noting that the fund would not exist if not for the attorney's efforts. The defendant has neither alleged nor shown that such a situation exists in the matter under consideration. As a matter of fact, perhaps the debtor would have declared bankruptcy earlier and, possibly, accumulated less debt if the defendant had not lent the monies. Also, in *Ingalls*, the court drew support for its holding from the laws applicable and particular to securing compensation for attorneys, which are clearly irrelevant to the matter at hand. The defendant was not within the class of persons intended to be protected by the statute.

Alternatively, in its *Reply Brief*, the defendant argues that this money should be paid to BBL, since it contributed labor and materials to the project. There may be those who may wish to make a claim that once the funds are recovered, they have a prior trust claim; however, this defendant is not one of those. Clearly, this is an argument for another day. Neither BBL, nor its claim are before the Court in the matter under consideration and, certainly, unless the funds are recovered from the defendant, no one can make such a claim.