FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROCHESTER, Plaintiff, v. BURDETT AVENUE PROPERTIES, INC., et al., Defendants; SANDY'S UPSTATE BUILDING SUPPLY, INC., et al., Respondents; V. ZAPPALA & Co., INC., Appellant.

Third Department, May 3, 1973.

*George A. Roland* for appellant.

*DiFabio & Couch* for Valente Gravel, Inc., and another, defendants.

*Charles R. Rinaldo* for Burdett Avenue Properties, Inc., defendant.

*Lee, LeForestier & Frost* (*Jerome Frost* of counsel), for Sandy's Upstate Building Supply, Inc., and others, respondents.

*Bartle, McGrane, Duffy & Murray* (*Edward M. Murray* of counsel), for Collins Lumber Corp., respondent.

MAIN, J. This is an appeal from an order of the Supreme Court at Special Term, entered December 15, 1972 in Rensselaer County.

The underlying action herein is an action by First Federal to foreclose a mortgage upon property owned by Burdett Avenue Properties, Inc. Prior to closing of the mortgage with plaintiff, a number of subcontractors involved in this project, including respondents, had filed mechanic's liens, while others, the appellant among them, had not.

The plaintiff's mortgage was recorded in the Rensselaer County Clerk's office on December 2, 1971. This mortgage apparently contained a provision that the mortgagee was not obligated to make advances in the face of existing liens. Nevertheless, the final advance of the construction loan mortgage was made by the plaintiff on December 2, 1971. Burdett Properties

paid a sufficient amount of this advance into the Rensselaer County Clerk's office to discharge those liens which had been filed at that time. Subsequent to this closing, the remaining lienors filed their liens.

Burdett defaulted on the first mortgage payment due and apparently no payments were ever made on this mortgage. Maintaining that its interest was prior to that of the appellant, the plaintiff began this action in March, 1972. Apparently the defendants, Burdett and others, have at various times entered into stipulations with prior lienors, settling their claims. The stipulations provide that the settlements are to be paid out of funds deposited with the Rensselaer County Clerk and that either party can obtain an ex parte order authorizing such payment.

On October 4, 1972, by such an ex parte order of Mr. Justice CASEY, the Rensselaer County Treasurer was authorized to issue three checks: one to the Rensselaer County Treasurer for $978.10; one to the attorneys for respondents herein, who are prior lienors, for $33,549.19; and one to the attorney for Burdett for $14,378.21.

Burdett had reached a settlement with the prior lienors whereby they agreed to a discharge of their liens upon receipt of 70% of their claimed value, thus avoiding further delay or difficulties. The remaining 30% was paid over to Burdett's attorney.

At this point, the subsequent lienors discovered the existence of the fund, as well as the disbursements therefrom. Three of the subsequent lienors, Zappala, Valente Excavating, Inc. and Valente Gravel Inc., obtained a show cause order from Mr. Justice CASEY, staying the payment of these three checks and requiring that the parties show cause why the ex parte order authorizing the payment should not be vacated. The court then modified its prior order in that it vacated the same to the extent that it authorized payment to the attorney for Burdett and to the County Treasurer, and both of these amounts were ordered held by the Treasurer as an asset of a Lien Law, article 3-A trust. The order also directed that all future orders concerning the distribution of the funds deposited with the County Clerk be made on notice to all other parties to the underlying action.

Zappala appeals from so much of the lower court's order as denied the application to restrain all further payments to prior lienors and from that part which declared any part of the funds held by the County Clerk to be a Lien Law, article 3-A trust

asset. On this appeal, appellant's only relevant contentions are that all the lienors, both prior and subsequent, should share equally in the deposit and that the issuance of ex parte orders violated certain provisions of the Lien Law.

The respondents claim that the deposit was made solely for their benefit. They also maintain that the subsequent lienors are not entitled to any portion of the deposit, since they are also subsequent in priority to the plaintiff. Finally, they contend that no notice is necessary to subsequent lienors, since they have no interest in any portion of the deposit.

The first question presented is whether payments to prior lienors should be restrained, and we answer in the negative. Section 20 of the Lien Law provides a method for discharging a lien, after notice of the lien has been filed, by the payment of money to the County Clerk. In a most relevant part, section 20 of the Lien Law seems to intend that money so deposited is deposited solely for the benefit of those persons whose liens have been filed at that time, that is, prior lienors. The first sentence of the section provides: '' A lien specified in this article * * * may be discharged after the notice of lien is filed at any time before an action is commenced to foreclose such lien, by depositing with the county clerk, in whose office the notice of lien is filed, a sum of money equal to the amount claimed in such notice, with interest to the time of such deposit.''

Thus, subsequent lienors would have no valid claim for a pro rata share of this deposit before the prior lienors have had their liens fully paid and discharged. The subsequent lienors had ample opportunity to file their liens before the disputed deposit was made and, absent any fraud on the part of the prior lienors, they are not to blame for appellant's failure to fully protect itself. Such being the case, there is no reason to restrain payments to the prior lienors.

A second question presented is whether the remaining funds held by the county constitute a Lien Law, article 3-A trust asset, and, again, our answer is in the negative.

The Lien Law suggests a legislative intent to give lienors first access to a fund paid into court in a lien foreclosure action and to have the trust created by article 3-A of the Lien Law attach to any residue which remains, after satisfaction of valid liens. Trust provisions of the Lien Law, which were added in 1942 and revised in 1959, were intended to supplement and not to supersede the older provisions dealing with the creation and enforcement of traditional mechanic's liens (*Onondaga Commercial Dry Wall Corp.* v. *150 Clinton St.,* 25 N Y 2d 106). This

purpose is made clear by section 79 of the Lien Law: "Nothing in this article [3-A] shall prevent the enforcement of any lien as provided in articles two and three of this chapter and neither such lien nor any satisfaction obtained thereby, shall be deemed a diversion of trust assets or an unauthorized preference."

Thus, if no subsequent lien had been filed, the residue remaining after satisfaction of the prior liens would constitute a Lien Law, article 3-A trust asset. However, as the subsequent liens were perfected, that is, filed, the amounts claimed by them were removed as trust assets and held for the benefit of the subsequent lienors (*Onondaga Commercial Dry Wall Corp.* v. *150 Clinton St., supra; Ingalls Iron Works Co.* v. *Fehlhaber Corp.*, 337 F. Supp. 1085). This is the result because the filing of a mechanic's lien removes any assets which are subject to such a lien from the scope of a Lien Law, article 3-A trust (*Hall* v. *Blumberg*, 26 A D 2d 64).

A final question presented concerns the procedure by which the lower court ordered the amounts paid out by ex parte order. The money deposited is a substitute for real property as security of the lien and may be paid out only if the lien is judicially established (*Matter of Cooper* v. *Emmanuele*, 25 A D 2d 809). Thus, the lienor must bring the same type of court proceeding to establish his lien as if he were proceeding against the property. Section 44 of the Lien Law provides that in such an action all lienors, prior and subsequent, are necessary parties. It would seem, therefore, that the ex parte order of October 4, 1972 did not meet these requirements. However, the amended notice of appeal states that it is only from so much of the court's order as denied the application to restrain all further payments to prior lienors and from that part which declared funds held by the County Clerk to be a Lien Law, article 3-A trust asset. Therefore, the argument does not appear to have been properly preserved for this court.

The order should be modified, on the law and the facts, by reversing so much thereof as declared any part of the fund deposited with the County Clerk to be a Lien Law, article 3-A trust asset, and, as so modified, affirmed, without costs.

Staley, Jr., J. P., Cooke, Sweeney and Kane, JJ., concur.

Order modified, on the law and the facts, by reversing so much thereof as declared any part of the fund deposited with the County Clerk to be a Lien Law, article 3-A trust asset, and, as so modified, affirmed, without costs.