[952 NYS2d 852]

NY Professional Drywall of OC, Inc., Individually and on Behalf of Itself and All Lienors, Creditors and Claimants for Labor or Materials in Connection with the Improvements of Real Property Herein Described, Appellant, v Rivergate Development, LLC, et al., Respondents, et al., Defendants.

Third Department, November 1, 2012

## APPEARANCES OF COUNSEL

*Kushnick Pallaci, PLLC*, Melville (*Vincent T. Pallaci* of counsel), for appellant.

*McNamee, Lochner, Titus & Williams, PC*, Albany (*Scott C. Paton* of counsel), for respondents.

## OPINION OF THE COURT

STEIN, J.

Plaintiff entered into a subcontract with defendant Rivergate Development, LLC to complete certain construction work on a large senior housing project on property owned by defendant Birches at Esopus Senior Housing. After the project began, disagreements arose between plaintiff and Rivergate. Ultimately, plaintiff filed a mechanic's lien on the property for nonpayment of material and labor in the amount of $137,531.39. Rivergate deposited $142,787.75 with the County Clerk of Ulster County to discharge the lien. Plaintiff then commenced this action alleging causes of action for, among other things, breach of contract, quantum meruit and relief pursuant to Lien Law articles 2, 3 and 3-A, including, as pertinent here, foreclosure of its mechanic's lien and an order compelling Rivergate, Birches and other related entities and individuals (hereinafter collectively referred to as defendants) to produce an accounting of all trust assets and to repay to plaintiff funds allegedly diverted from the trust. Plaintiff later moved, as relevant here, for permission to maintain the action as a class action on behalf of all similarly situated parties pursuant to CPLR article 9. Defendants cross-moved for, among other things, summary judgment dismissing plaintiff's Lien Law article 3-A claims. Plaintiff

now appeals from Supreme Court's order denying its request for class action status and granting defendants' cross motion dismissing the Lien Law article 3-A causes of action.

We reverse. Lien Law article 3-A "creates trust funds out of certain construction payments or funds to assure payment of subcontractors" who perform work on real property for owners or general contractors (*Aspro Mech. Contr. v Fleet Bank*, 1 NY3d 324, 328 [2004] [internal quotation marks and citation omitted]; *see Matter of Bette & Cring, LLC v Brandle Meadows, LLC*, 81 AD3d 1152, 1153 [2011]). The trust commences "when any asset thereof comes into existence, whether or not there shall be at that time any beneficiary of the trust" and, as relevant here, "continue[s] with respect to every asset of the trust until every trust claim arising at any time prior to the completion of the . . . subcontract has been paid or discharged, or until all such assets have been applied for the purposes of the trust" (Lien Law § 70 [3]; *see Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor*, 97 NY2d 256, 262 [2002]; *see also* Lien Law § 71). The owner or general contractor becomes a fiduciary over the accounts received to complete the construction project and any use of those assets for a purpose other than the costs associated with that project constitutes a diversion of the funds and a breach of the fiduciary's duty (*see* Lien Law §§ 70, 71, 72; *Aspro Mech. Contr. v Fleet Bank*, 1 NY3d at 329). Fiduciaries are required to maintain certain books and records pertaining to the trust assets received and payments made therefrom, which records must be made available for inspection by the beneficiaries of the trust at monthly intervals (*see* Lien Law §§ 75, 76). At the beneficiary's option, such beneficiary shall, alternatively, be entitled upon request "to receive a verified statement setting forth the entries with respect to the trust contained in such books or records" (Lien Law § 76 [1]). A trust beneficiary may bring suit in a representative capacity to enforce the trustee's Lien Law duties (*see* Lien Law § 77).

Here, in order to satisfy their initial burden of demonstrating the absence of material issues of fact which would require a trial (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Bergstrom v McChesney*, 92 AD3d 1125, 1126 [2012]), defendants proffered, among other things, plaintiff's notice of filing of a mechanic's lien, a certificate of deposit from the County Clerk of Ulster County discharging that lien and the affidavit of Peter Cornell, Rivergate's project manager and accountant, alleging that defendants did not divert any trust assets and demonstrat-

ing that they had deposited funds sufficient to discharge all mechanics' liens filed by all subcontractors on the project who had not yet been paid in full. Defendants contend that plaintiff's filing of a mechanic's lien and/or the payment by defendants to the County Clerk of a sum sufficient to discharge such lien resulted in a transfer of plaintiff's claims for the alleged nonpayment for work from the property to the funds on deposit with the County Clerk (*see* Lien Law § 20; *Galligan v Malz*, 55 AD2d 733, 733 [1976], *appeal dismissed* 41 NY2d 900 [1977]; *see generally Aquilino v United States of Am.*, 10 NY2d 271, 281 [1961]), thereby removing such funds from the Lien Law article 3-A trust and divesting plaintiff of its status as beneficiary of the trust. Supreme Court agreed and, therefore, dismissed plaintiff's causes of action and related requests for relief under article 3-A. Thus, the question before us is whether, under the circumstances here, plaintiff may simultaneously maintain an action to foreclose its mechanic's lien and an action under article 3-A. We are of the view that it may.[1]

Lien Law article 3-A was enacted after, and as a supplement to, the provisions of Lien Law articles 2 and 3 (*see Onondaga Commercial Dry Wall Corp. v 150 Clinton St.*, 25 NY2d 106, 111 [1969]). In enacting article 3-A, the Legislature sought to provide a means of ensuring that there were sufficient funds available to pay subcontractors for work performed by creating a statutory trust for funds received in connection with the improvement of real property (*see* Lien Law § 70 [1]). Notably, Lien Law § 71 (4) provides that

> "[p]ersons having claims for payment of amounts for which the trustee is authorized to use trust assets . . . are beneficiaries of the trust *whether or not they have filed or had the right to file a notice of lien as provided in [Lien Law] article [2] . . . or shall have recovered a judgment therefor*" (emphasis added).

Moreover, Lien Law § 79 explicitly states that "[n]othing in this article shall prevent the enforcement of any lien as provided in articles [2] and [3] of this chapter" and that

---

1. In making its determination, Supreme Court expressly relied, as urged by defendants, on our decision in *First Fed. Sav. & Loan Assn. of Rochester v Burdett Ave. Props.* (41 AD2d 356 [1973], *appeal dismissed* 33 NY2d 765 [1973]). However, that decision was based upon our earlier decision in *Hall v Blumberg* (26 AD2d 64 [1966]), which was intended to apply only in limited circumstances not present in the instant matter.

"[f]or the purposes of determining the share of any trust beneficiary upon any distribution in an action to enforce the trust, the trust claim of a trust beneficiary shall not be reduced by reason of any lien to which he [or she] is entitled or by reason of any rights under any bond to which he [or she] is entitled by reason of his [or her] lien."

Thus, we have previously held in a case involving, among other things, the adequacy of a trustee's compliance with Lien Law §§ 71 and 75, that Lien Law article 3-A remedies are not exclusive and, accordingly, that "a lienor may pursue both its trust fund remedies under Lien Law article 3-A and its ordinary remedies in enforcing the lien" (*Matter of Bette & Cring, LLC v Brandle Meadows, LLC*, 81 AD3d at 1155 [internal quotation marks and citation omitted]). Consequently, we concluded in that case that a trust beneficiary, such as plaintiff here, who has a claim that is unpaid after 30 days is entitled to seek enforcement of its rights to information concerning the trust "regardless of whether a mechanic's lien has been bonded" (*id.*). We discern no basis for reaching a different result where, as here, the lien against the property has been discharged by a cash deposit (*see generally* Lien Law § 70).

To construe the Lien Law, as defendants urge us to do, as automatically resulting in the termination of a beneficiary's interest in a Lien Law article 3-A trust upon the perfection and/or discharge of a mechanic's lien—or, indeed, a termination of the entire trust upon the perfection and/or discharge of the mechanics' liens of all unpaid subcontractors—before the claims of such subcontractors are actually determined on the merits and satisfied would be contrary to both the explicit language of the statute and to the legislative purpose behind its enactment. For example, in the event that plaintiff's mechanic's lien is invalidated by some procedural defect, defendants, as the former trust fiduciaries, would be relieved of their obligation to maintain and account for the funds deposited with the County Clerk, and plaintiff, as the former trust beneficiary, would be deprived of its article 3-A remedies.

Nor are we persuaded that the discharge of a Lien Law article 2 lien by the deposit of money with the County Clerk is equivalent to a payment or discharge of the Lien Law article 3-A trust claim (*see* Lien Law § 70 [3]). Further, while defendants' deposit of trust funds with the County Clerk in order to discharge plaintiff's mechanic's lien is not considered a diversion of trust

assets (*see* Lien Law § 79), defendants' assertions that no diversion has occurred do not entitle them to dismissal of plaintiff's article 3-A causes of action, particularly since there are numerous accounting requirements in article 3-A that are not reflected in the documents supplied by defendants. In our view, defendants must fulfill their fiduciary duties with regard to the article 3-A trust until such time as the merits of the subcontractors' claims are judicially or otherwise determined and any amounts determined to be owed are actually paid.[2] Thus, defendants failed to meet their initial burden of demonstrating their entitlement to judgment as a matter of law and their cross motion for summary judgment should have been denied (*see Alvarez v Prospect Hosp.*, 68 NY2d at 324; *Bergstrom v McChesney*, 92 AD3d at 1126).

Finally, with regard to plaintiff's motion for permission to maintain a class action, Supreme Court concluded that, since the Lien Law article 3-A trust fund no longer existed and no trust assets remained to be shared with other subcontractors (whose mechanics' liens against the property had also been discharged), there were no common questions of fact necessary to grant class action status (*see* Lien Law § 77 [1]; CPLR 901). In view of our determination herein, the matter shall be remitted to Supreme Court for a further review of plaintiff's motion for class action certification so that it may exercise its discretion in the first instance (*see* Lien Law § 77 [1]; *see generally Yonkers Contr. Co. v Romano Enters. of N.Y.*, 304 AD2d 657, 658 [2003]).

To the extent not specifically addressed herein, defendants' remaining contentions have been considered and found to be without merit.

LAHTINEN, J.P., MALONE JR., MCCARTHY and GARRY, JJ., concur.

Ordered that the order is reversed, on the law, without costs, cross motion denied and matter remitted to the Supreme Court for a determination of plaintiff's motion seeking permission to

---

2. While plaintiff is clearly not entitled to duplicative recovery on its various claims, this is no different from other actions in which the complaint alleges multiple causes of action in the alternative. However, inasmuch as pursuit of plaintiff's Lien Law article 3-A claims may become academic in the event that plaintiff recovers on its mechanic's lien or contract-related claims, it may be prudent, as a practical matter, to determine those claims before the article 3-A claims (*see generally* CPLR 3002; *Henry Loheac, P.C. v Children's Corner Learning Ctr.*, 51 AD3d 476, 476 [2008]; *William Conover, Inc. v Waldorf*, 251 AD2d 727, 728 [1998]).

maintain the action as a class action and for further proceedings not inconsistent with this Court's decision.